[Civ. No. 4532.   Second Appellate District, Division Two.—May 21, 1927.]

DAISY LEE HARRIS, Respondent, v. W. J. HENSLEY, Appellant.

[1] TRUSTS—HUSBAND AND WIFE—CONVERSION OF WIFE'S SEPARATE PROPERTY—FINDINGS—EVIDENCE.—In this action by a divorced wife to establish a trust in her favor in certain real property purchased by her former husband with the proceeds of a business in which, during marriage, he invested her separate property, the finding that the entire amount of funds coming into the husband's hands from the sale of the wife's separate property was converted by him to his own use was not supported by the evidence.

[2] ID.—USE OF WIFE'S SEPARATE PROPERTY—CONSENT OF WIFE—EVIDENCE.—In such action, the evidence was sufficient to show that the husband's use of the wife's separate property in the business conducted by him and a copartner was with her consent.

[3] ID.—INTENTION TO MAKE GIFT—EVIDENCE—PRESUMPTIONS.—In such action, where the husband used his wife's separate property in the business conducted by himself and his brother as copartners, he became a trustee to that extent for her benefit, in the absence of proof of the wife's intention to make a gift sufficient to overcome the presumption of trusteeship.

[4] ID.—LANDS PURCHASED BY HUSBAND—USE OF WIFE'S FUNDS—EVIDENCE—FINDINGS.—In such action, the evidence was sufficient to support the finding that the wife's money, used and invested

---

3. Effect of investment by husband in his own name of wife's separate property in real estate to create trust in her favor, notes, 6 L. R. A. (N. S.) 381; 26 L. R. A. (N. S.) 161. See, also, 13 Cal. Jur. 868; 13 R. C. L. 1391.

together with the community interest in conducting and managing the husband's business, became a part of lands subsequently purchased by him.

[5] ID.—JUDGMENTS—EXCESSIVE AWARD TO WIFE—EQUITY.—In such action, the award by the trial court to the wife of all the real property purchased by the husband as a result of the community interest and the investment of her separate property in his business conducted for eight or ten years was unjust and inequitable, even though the wife's separate interest could not be segregated.

[6] ID.—PURPOSE OF LAW NOT TO PUNISH HUSBAND AS TRUSTEE.—In a proceeding of this character, it is not the purpose of the law, or of courts of equity, to punish the husband in his capacity as trustee.

[7] ID. — SHARE TO WHICH WIFE ENTITLED — PROFITS ACQUIRED THROUGH HUSBAND'S USE OF SEPARATE PROPERTY.—In such action, the wife was entitled to the principal of her separate property invested by her former husband in his business during the marriage, together with a fair proportion of the profits acquired through its use under his direction.

[8] ID.—HUSBAND'S INTEREST IN REAL PROPERTY—LIEN OF WIFE.—In such action, the wife was entitled to a lien on her former husband's interest in real property purchased by him as a result of the investment of her separate property in his business during marriage, where the original investment and its results could be fairly traced into the purchase price of the several tracts acquired by him.

[9] ID.—WIFE'S SHARE OF PROPERTY—JUDGMENTS.—In such action, the wife was entitled to a personal judgment against her divorced husband for the proceeds of sale, with interest from date of sale, of property purchased by him during marriage with her separate money, where the money received by him after divorce could not be traced into the specific property.

---

(1) 39 Cyc., p. 633, n. 22.    (2, 3) 39 Cyc., p. 138, n. 30.    (4) 39 Cyc., p. 164, n. 77.    (5) 39 Cyc., p. 638, n. 56.    (8) 39 Cyc., p. 639, n. 65.    (9) 39 Cyc., p. 644, n. 7.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

---

7.   See 13 R. C. L. 1391; 26 R. C. L. 1354
8.   See 25 Cal. Jur. 255; 26 R. C. L. 1370.
9.   See 25 Cal. Jur. 254.

Thomas Scott, Sr., Thomas Scott, Jr., Kaye & Siemon and L. E. Nathan for Appellant.

E. J. Fenstermacher and Williams & Fenstermacher for Respondent.

MURPHEY, J., *pro tem.*—The plaintiff and respondent and defendant and appellant were formerly husband and wife and were such at the inception of the transaction resulting in the pending litigation. They were married in Oklahoma in 1902, where they resided until 1906, when they came to California, where they resided until 1917, when they were divorced. The plaintiff was an American Indian, and as such succeeded with her children by defendant to certain land allotments in the state of Oklahoma. The property so allotted to plaintiff was manifestly her separate property. Early in the year 1911 the defendant and appellant disposed of his business interests in the city of Bakersfield and made a trip to Oklahoma, and while there, with the consent of the plaintiff, disposed of the land hereinbefore mentioned belonging to her, for which he received $2,100 in cash, and a lot and house at Tulsa, which he subsequently, and after the parties were divorced, sold for the sum of $500. In addition to these sums he received several hundred dollars, the exact amount of which is uncertain, through the sale of some portions of the land allotted to their children. The marital relationship of the parties after the return of the defendant to California in the fall of 1911 was to say the least quite tempestuous. They lived together at times and lived separately at other times from that date up to the date of the divorce, which was granted some time in the year 1917. The circumstances and conditions under which they lived prior to 1911 is not disclosed by the record. The evidence clearly discloses that the plaintiff was completely dominated by the defendant. On the return of the defendant from his trip to Oklahoma, the family made a trip to the northwest and on the return trip remained in Tacoma for a considerable period of time, where a lodging-house business was purchased and conducted by them, whether profitably or unprofitably may not be accurately ascertained from the record. This business was sold and

the parties returned to Bakersfield, California, their original place of residence in this state, where the defendant purchased a meat market business, taking in with him as his partner a brother. The bone of contention in this litigation centers around the capital invested in this enterprise, its source and the circumstances and conditions surrounding the investment. It may be stated in passing that none of the money received by defendant for the sale of the plaintiff's property in Oklahoma was ever delivered directly to her; however, it is the contention of the defendant that this money was largely if not totally consumed in expenses in Oklahoma and to pay the expenses of the trip of the family to the northwest and their return. There is no doubt, and the record we think fully establishes the fact, that at the time of the purchase of this meat market business in Bakersfield the defendant had no funds or other property belonging to him, and there is evidence in the record from which it may reasonably be concluded that the partner brother of the defendant was also broke. A cash payment of $1,500 was made on the purchase price of the business and installment notes were given by the brothers for $3,000 additional, payable at stated times in the amounts of $500 at each payment.

[1] Assuming that the evidence before the court satisfactorily establishes the bankrupt condition of the brother, and in view of the undisputed fact that the defendant himself had nothing, it may be reasonably and logically held that the initial cash payment of $1,500 was made up entirely from the separate funds of the plaintiff. The trial court made no specific finding on this point, but does find that the entire amounts of $2,100 and $500 were appropriated and converted by defendant to his own use. This finding is not supported by the evidence in the case. It clearly appears that a considerable portion of the original $2,100 that came into the possession of the defendant as the result of the sale of plaintiff's separate property in Oklahoma was expended, with the consent of the plaintiff, on the trip that was made to the northwest, and the evidence also discloses that the $500 received from the sale of the Tulsa property did not come into the possession of the defendant until some six or seven years subsequent to the purchase of the Bakers-

field meat market business. It is the defendant's contention that the money used as an initial payment on this property was borrowed by him from his brother, a contention that apparently had little weight with the trial court. This business enterprise was successful and profitable. The $3,000 indebtedness against the property at the time of the purchase was entirely paid off, and during the succeeding eight years the profits of the business were such that the defendant purchased the several parcels of real property described in the complaint and which the plaintiff demanded should be impressed with a trust in her behalf to the extent of the entire interest of the defendant, and such was the holding and judgment of the trial court. It is manifest that the trial court paid little attention to the evidence of the defendant and was slightly impressed thereby. The brother of the defendant was not called as a witness. Notwithstanding the denials of the defendant, his conduct as a witness and the unconscionable contracts he extorted from his wife (as found by the trial court) may well have justified the trial court in discrediting him on all points wherein his testimony was in his own favor if the conditions were such that contradictory evidence could not be produced. The plaintiff seriously objected to the defendant's taking his brother in as a partner in the Bakersfield business. [2, 3] This, however, was the only objection that she made to the purchase of the business and to the investment of her funds therein, and we are satisfied that the evidence amply justifies our conclusion that the use of the plaintiff's capital in the business conducted by the defendant and his brother was with her consent, and that by accepting and using this fund in his business he became a trustee to that extent for her benefit. As was well said by the supreme court of this state in the case of *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, at page 481 [111 Pac. 360, 363]: " . . . the mere acquirement of the possession of the wife's separate property by the husband and his subsequent management and control of the same, all with her consent, do not necessarily show an intent on her part to make a gift thereof to the husband, or to change its *status* to community property, but that the effect of these facts, without explanation, was to raise a presumption that it continues to be her separate

property and that the husband takes it in trust for her; that it devolves on the husband who claims that it is a gift or loan, to prove the fact, but that this may be done by a showing of the nature of the transaction and the circumstances as well as by proof of an express agreement. (153 Cal. 5 [94 Pac. 94].) These propositions are well supported by the authorities. . . . '' It may be said in this case, as it was in the Ingersoll case, that the defendant was the husband of the plaintiff, that he received, invested, managed, and controlled her property in his own name and with her consent and that under such circumstances a trust relationship arises unless there was some evidence of sufficient force and weight to overthrow this presumption. It may be said that in the case at bar there was no such evidence presented to the trial court and there was no evidence whatever nor are there any facts or circumstances from which any inference may be drawn that it was the intention of the wife to give to the defendant the money owned by her and invested in the business. In view of the circumstances of this case, the humility of the wife, her complete subservience to the will of the husband, her entire want of knowledge of business affairs, ''being such a fool,'' as stated by the husband, that he would not discuss money matters with her, we have no hesitancy in saying that this case falls squarely within the rule laid down in the Ingersoll case. The court further says, in the Ingersoll case: ''The fact that the trust money was in part commingled with the community property so as to destroy its specific identity does not necessarily destroy the trust as to that part, nor prevent its enforcement.'' [4] In the case at bar it may reasonably be concluded that the plaintiff's money, together with the community interest created by the activities of the defendant in conducting and managing the business, runs through and becomes part and parcel of the subsequent land purchases set out in the complaint in this action. It is, however, equally true that it would be impossible to accurately or probably at all segregate this trust fund. [5] Upon this state of facts the trial court awarded to the plaintiff all the property acquired by the defendant and comprising all the real property purchased from the net proceeds of the meat market business. This we deem unjust and inequitable, and we know of no

law to support this conclusion of the trial court which in effect decrees to the plaintiff the net results of the defendant's services over a period of eight or ten years. [6] In proceedings of this character it is not the purpose of the law, nor of courts of equity, to punish the trustee. [7] The plaintiff is entitled to and should receive the principal of the trust fund and a fair proportion of the profits acquired through its use under the direction and business sagacity of the defendant. [8] As the trust property involved in this litigation is the result of the capital invested by the plaintiff, and considering the community interest resulting from the services of the defendant until the marital relationship was severed by divorce, and the subsequent individual interest acquired by the defendant through his services in the management of the trust property, we feel that the ends of justice would be best subserved by awarding to the plaintiff such sum as the court shall definitely find was contributed by her as an initial payment on the business, together with what the court shall find to be a fair proportion of the accrued profits, and in view of the fact that these amounts may be fairly traced into the purchase price of the several tracts of land described in the complaint, we are of the opinion that the plaintiff would be entitled to a lien on the defendant's interest in these tracts of land to secure the payment of the amount so found to be invested in the business. [9] As to the $500 secured from the Tulsa property by the plaintiff after the marital relationship of the parties hereto was severed, there is no evidence in the record from which it may be deduced that this money was used in the purchase of any of the tracts of land described in the complaint. That it is the separate property of the plaintiff there can be no doubt. That the defendant obtained the title to it in his own name through force and coercion is specifically found by the trial court, and the finding is amply supported by the evidence. We are of the opinion that the plaintiff is entitled to a personal judgment against the defendant for the amount of this money with interest at seven per cent from the date of the sale of the Tulsa property by him, which date may be determined by the trial court in the further proceedings in this action.

The judgment of the trial court is reversed, with directions to proceed in accordance with the suggestions con-

tained in this opinion and to take such evidence as may be necessary to determine the matters therein indicated.

Works, P. J., and Craig, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1927.