[Civ. No. 680.   Fourth Appellate District.—November 6, 1933.]

BESSIE ZELLER, Respondent, v. D. A. KNAPP et al., Appellants.

Daniel A. Knapp, *in pro. per.*, for Appellants.

A. S. Goldflam for Respondent.

MARKS, J.—On February 27, 1929, plaintiff recovered judgment against D. A. Knapp in the sum of $6,000 and costs. This judgment has been affirmed on appeal. (*Zeller* v. *Knapp*, 115 Cal. App. 486 [1 Pac. (2d) 1071].) The complaint in that action was probably filed prior to November 12, 1927. An abstract of judgment was recorded in Orange County on February 24, 1930. An execution was issued and returned wholly unsatisfied.

The complaint in this action was filed on July 17, 1930. It is alleged that after contracting the debt upon which the first judgment was rendered, and on November 12, 1927, in contemplation of insolvency, D. A. Knapp transferred to Myra C. Knapp, his wife, the property here in question without any consideration and with the intent upon his part to

hinder, delay and defraud his creditors. It is not alleged that Myra C. Knapp committed any fraud or had any notice of the fraud of D. A. Knapp, her grantor.

The answer admits the transfer; denies that it was in contemplation of insolvency or without consideration, and denies that it was made by D. A. Knapp with any design to hinder, delay or defraud any of his creditors. A separate defense alleges that the property in question was purchased with the separate funds and property of Myra C. Knapp, and that title was placed in D. A. Knapp as trustee for her, and that he at no time had any other interest in the property than as trustee for his co-defendant.

The trial court found that the allegations of the complaint were true, and that the allegations of the special defense were untrue. The findings of particular interest here are, that the transfer was not made for a valuable consideration; that it was made in contemplation of the insolvency of the defendant D. A. Knapp; that the deed was made and delivered for the purpose and with the intent of D. A. Knapp to hinder, delay and defraud his creditors, especially the plaintiff; that the property was not purchased with the separate funds of Myra C. Knapp and that D. A. Knapp did not hold title to the property as trustee for Myra C. Knapp.

By a grant deed dated May 18, 1926, E. A. Whitlock conveyed to Myra C. Knapp, a married woman, property near Costa Mesa in Orange County. "Whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property." (Sec. 164, Civil Code, prior to amendment of 1927; *Shaw* v. *Bernal*, 163 Cal. 262 [124 Pac. 1012].) Concerning this purchase Myra C. Knapp testified as follows: "Q. What was the consideration for it? A. There was part money paid for that deed, and services, and part of the deed was given to me by Mr. Whitlock as an old family friend. Q. Was any of the money paid for that deed, paid by Mr. Knapp? A. No." Both defendants testified that the money paid for the property was from the separate estate of Mrs. Knapp. There is no contradictory evidence in the record.

The Costa Mesa property was conveyed by Mr. and Mrs. Knapp to Corinne Clement by a deed dated March 4, 1927, and recorded March 19, 1927. Mrs. Knapp testified that she

received '$2,864.04 for the property and deposited this money in the Pan American Bank of California on March 21, 1927. Other deposits in this account, all made between April 26 and September 7, 1927, inclusive, total $2,299.83. No attempt was made to show the source of these other deposits, or the name or names in which this account stood other than in the opening statement of counsel for appellants where he said: "Mrs. Knapp prior to that time had deposited in her account in the Pan American Bank in Los Angeles, an account (she was in the boarding house, I was in the law office), she therefore made it joint, but joint in name only because all of the checks were made out either by myself or her, only with her permission." Several checks drawn on this account are in evidence, some signed by D. A. Knapp and others by Myra C. Knapp.

By a deed dated May 26, 1927, and recorded May 28, 1927, Hazel G. Doughty conveyed the property in question here, located in the city of Huntington Beach, to D. A. Knapp for a cash consideration of $567.59. It appears that other considerations were given. Both defendants testified that the money paid was that of Myra C. Knapp and part of that received by her from the sale of the Costa Mesa property. In connection with this conveyance Hazel Doughty and D. A. Knapp executed what was called "Contract of Trustee". This instrument recited that an execution had been levied upon the property and that Mrs. Doughty had paid $225 on the judgment; that the balance of $567.79 was paid by Knapp; that either out of the rents, issues or profits from the property, or its sale, or both, (1) Knapp should be repaid the money advanced by him with interest; (2) that the $225 and interest should be repaid to Mrs. Doughty; (3) that the overplus, if any, should be equally divided between them. This was modified by an agreement dated August 30, 1927, which provided that Mrs. Doughty released all interest in the Huntington Beach property for the sum of $1,000, to be paid by Knapp, $260 to be in cash and the balance in installments of $55 per month. Mrs. Knapp testified she made all the payments on this second contract and that Mr. Knapp had no money invested in the property in question.

Under date of December 3, 1927, Knapp executed an instrument which was entitled "Notice of Lien". It recited

that he was ''the sole owner'' of the property in question; that H. G. Slater had loaned him the sum of $900 and attempted to give Slater a lien on the property to secure the loan.

Under date of November 12, 1927, Knapp executed a deed to Myra C. Knapp to this Huntington Beach property. The deed was probably delivered after the third day of December, 1927, and was not recorded until November 21, 1928.

There is evidence in the record to the effect that Knapp told two witnesses who were in financial difficulties that the way to preserve property and save it from the creditors of a husband was to put it in the name of the wife; that he had done so.

We have read the record numerous times and have studied it carefully and are left with the impression of fraud on the part of the defendants. There are suggestions in the testimony of both of them, which, if followed on cross-examination by the plaintiff, might have developed the fact that neither the Costa Mesa property, nor the money in the Pan American Bank of California, was the separate property of Myra C. Knapp. Plaintiff did not avail herself of the opportunity of pursuing these lines of investigation. She rested her case solely upon the record evidence. We are, therefore, left with nothing to refute the presumption that the property conveyed by Whitlock to ''Myra C. Knapp, a married woman,'' was her separate property, and the testimony of both defendants that the Costa Mesa property and the money in the bank were the separate property of Mrs. Knapp, and that the Huntington Beach property was purchased with the separate funds of Mrs. Knapp. Therefore, the only evidence now before us discloses that the Costa Mesa property was the separate property of Myra C. Knapp; that she received $2,864.04 in cash when it was sold; that this money was deposited in the Pan American Bank of California on March 21, 1927, and was used exclusively for the purchase of the Huntington Beach property, title to which was placed in the name of D. A. Knapp, her husband.

■ Where a husband purchases property with money which is part of the separate estate of his wife and takes title in his own name, equity regards the purchase as made in trust for the wife. From such facts alone there is no presumption of a gift from the wife which would change

the status of the property to that of the community, the presumption being that it continues to be the separate property of the wife held in trust for her by her husband. (*Shaw* v. *Bernal, supra; Harris* v. *Hensley,* 83 Cal. App. 283 [256 Pac. 832].) The trust would be either resulting or express, depending upon the circumstances of its creation. (*Title Insurance & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 Pac. 360].) ██ Therefore, in the instant case we must consider from the evidence before us that D. A. Knapp held the legal title to the property in question as trustee for the use and benefit of Myra C. Knapp.

Situations factually similar to the instant case were before the courts in the case of *Breeze* v. *Brooks,* 71 Cal. 169 [9 Pac. 670, 11 Pac. 885], *Murphy* v. *Clayton,* 113 Cal. 153 [45 Pac. 267], and *Bank of Cottonwood* v. *Henriques,* 91 Cal. App. 88 [266 Pac. 836]. In each case the trustee had conveyed the legal title to real estate to his *cestui que trust,* and a creditor of the insolvent trustee sought to avoid the conveyance as a fraud upon creditors. In the last cited case it is said, at pages 94 and 95: "The facts are undisputed, and the court found, that when the property was purchased on November 17, 1917, the intervener Frank R. Henriques paid the whole purchase price, and that the conveyance by the seller, M. B. Connell, to William R. Henriques, was made at the request of Frank R. Henriques upon the understanding and agreement that William R. Henriques would take title to the property as trustee, for the use and benefit of Frank R. Henriques and William R. Henriques would have no title or interest in said property other than as trustee.

"The rule is well settled that when land is purchased, for which one party pays the consideration and another party takes the title, a resulting trust immediately arises in favor of the party paying the consideration, and the other party becomes the trustee. It is equally well settled that the party setting up the trust must show the money was paid by him at or before the execution of the conveyance. (Citing cases.)

"It follows, therefore, that William R. Henriques was not the owner of the property in question, but was only the trustee for Frank R. Henriques, the real owner, and that William R. Henriques had no interest in the lands in ques-

tion, to which the lien of appellant's judgment could attach. The law is also well settled that a bankrupt may continue to discharge his duties as a trustee, and trust property in his possession does not go to his assignee or to his creditors. (*Hayford* v. *Wallace*, 5 Cal. Unrep. 476 [46 Pac. 293]; Perry on Trusts, sec. 346.) Therefore, William R. Henriques, having no interest in the lands to which appellant's judgment could attach, it is wholly immaterial whether he was solvent or insolvent, or contemplated insolvency when he made the deed of the trust property to his sister, Marie E. Henriques.''

Mrs. Knapp testified that part of the purchase price of the Costa Mesa property was paid in services. There is nothing to show the value of these services or whether they were performed before or after the marriage of the defendants.

This case may be tried again and if the evidence is fully developed on the questions we have been discussing it may be determined that the Costa Mesa property was not the separate property of Myra C. Knapp and that the Huntington Beach property was not paid for out of her separate property and that no trust existed. If that should happen the question of the solvency or insolvency of D. A. Knapp at the time of the transfer to his wife will become important.

In the trial in the court below Knapp tried to introduce evidence of his solvency. He proved that he owned stock in two corporations but was prevented from testifying as to the market value of this stock by the objections of the plaintiff, which were sustained. It has long been the rule in California that the owner of property can testify as to its value. In *Hood* v. *Bekins Van & Storage Co.*, 178 Cal. 150 [172 Pac. 594], it was said, quoting from Wigmore on Evidence: " 'The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury.' ''

The defendants sought to introduce evidence concerning the transactions of D. A. Knapp with H. G. Slater. This was excluded on the ground that Slater was dead. The provisions of subdivision three of section 1880 of the Code of Civil Procedure do not apply to the situation here presented.

■ The defendants maintain that the trial court erred in admitting evidence of statements of Knapp made after the delivery of the deed to his wife to the effect that he had protected himself against his creditors by putting his property in his wife's name. It is held that such evidence is admissible where the issue is fraud. (*Southwick* v. *Moore*, 61 Cal. App. 585 [215 Pac. 704].)

Judgment reversed.

Barnard, P. J, and Jennings, J., concurred.