[Civ. No. 13278.   Second Dist., Div. Three.   Aug. 5, 1942.]

IDA M. OWINGS, Respondent, v. HUBERT F. LAUG-HARN, as Trustee in Bankruptcy, etc., Appellant.

Zuckerman & Stein, Edward K. Zuckerman and Arthur Edmund Stein for Appellant.

John C. Kleber for Respondent.

SHAW, J. pro tem.—Plaintiff brought this action to quiet her title to four lots, alleged to be her separate property, against defendant as the trustee in bankruptcy of plaintiff's husband. Defendant filed a cross-complaint in which he alleged that a deed of these lots, made to plaintiff by her husband, was fraudulent and void as against creditors of the husband, and sought to have his title as trustee quieted against plaintiff and her husband. Judgment was rendered in favor of plaintiff on both complaint and cross-complaint, from which defendant appeals.

Plaintiff and her husband were married more than forty years before the trial, lived in Nebraska from 1903 to 1921, and have lived in California since 1921. While they lived in Nebraska the plaintiff acquired some real property which she and her husband testified was her separate property, although the title stood of record in her husband's name. This property was sold for $3,100 at or before the purchase of any of the property now in question. The plaintiff's husband also gave her, back in Nebraska, the profit, amounting to $2,800, on the sale which she negotiated of some property belonging to him. She also worked at dressmaking and other things, under an agreement with her husband that what she made should be her own property. Altogether she had more than $7,000. Defendant criticizes the testimony by which these facts are

shown and asks us to reject it, as far as it goes to establish plaintiff's ownership of funds which were her separate property. But, while this testimony contains some inconsistencies and discrepancies, these presented only a question for the trial court, whose acceptance of the testimony is conclusive here.

In 1919 plaintiff's husband came to Los Angeles on a visit, apparently preliminary to their move out here, and saw some property which he liked, being two of the lots here in question, on which was a house. On his return to Nebraska he told plaintiff of it; he sent some of her money out here to hold the deal, with her consent, and later the property was conveyed to him, the entire purchase price being paid from plaintiff's separate funds, above described. A year or two later plaintiff bought three more lots, taking the title in her husband's name and mortgaging those first bought for enough money to make the down payment. Then she sold one of these three lots for enough to pay the price of all three, leaving all the lots clear of encumbrance.

It is plaintiff's contention that, although the title to all the lots above named was taken in her husband's name, yet, since she paid the entire price, a trust resulted in her favor and he held the property merely as her trustee. It is further contended that, assuming the existence of this trust, the conveyance which he made to her was merely in execution of this trust and for that reason it was valid as against this defendant and the creditors whom he represents. ■ As defendant tacitly concedes, where one who holds property as trustee for another under a resulting trust conveys to that other the property so held, neither the creditors nor the trustee in bankruptcy of such grantor can attack the conveyance. (*Nishi* v. *Downing,* (1937) 21 Cal. App. (2d) 1, 3 [67 P. (2d) 1057]; *Zeller* v. *Knapp,* (1933) 135 Cal. App. 122, 128 [26 P. (2d) 704]; *Bank of Cottonwood* v. *Henriques,* (1928) 91 Cal. App. 88, 95 [266 Pac. 836]; *Murphy* v. *Clayton,* (1896) 113 Cal. 153, 159 [45 Pac. 267].)

Defendant denies, however, that there was such a trust as plaintiff claims. Section 853 of the Civil Code reads as follows: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." In line with this presumption it has been held: "Where a husband purchases property with

money which is part of the separate estate of his wife and takes title in his own name, equity regards the purchase as made in trust for the wife. From such facts alone there is no presumption of a gift from the wife which would change the status of the property to that of the community, the presumption being that it continues to be the separate property of the wife held in trust for her by her husband." (*Zeller* v. *Knapp, supra,* 135 Cal. App. 126, 127. To the same effect, see *Title Insurance & Trust Company* v. *Ingersoll,* (1908) 153 Cal. 1, 5 [94 Pac. 94]; *Title Insurance & Trust Company* v. *Ingersoll,* (1910) 158 Cal. 474, 481 [111 Pac. 360]; *Shaw* v. *Bernal,* (1912) 163 Cal. 262, 271 [124 Pac. 1012]; *Harris* v. *Hensley,* (1927) 83 Cal. App. 283, 288 [256 Pac. 832].)

■ The presumption declared by section 853 is rebuttable, the question finally being as to the intention of the parties at the time. (*Lezinsky* v. *Mason Malt W. D. Co.,* (1921) 185 Cal. 240, 251 [196 Pac. 884]; Code Civ. Proc., § 1961.) ■ In addition to the facts above stated the record contains the following testimony regarding the understanding between plaintiff and her husband for the purchase of the first two lots. The plaintiff testified: "Well, I told him to take the title in his name. He knew the people that were to buy the place, I didn't, and I was sent out here by the doctor expecting to live not longer than six years, and said, 'Take the title in your name, and if anything happens to me, you won't have to go through a lot of court procedure; and if I get well, you can give them back to me if I ever want them.' " "Q. What was the understanding with reference to how Mr. Owings should hold the title to that, in trust for you, or otherwise? A. Why, just in trust for me; if I ever wanted it, he would give it back to me, if I ever got well." On the same subject plaintiff's husband testified, "Q. What, if anything, was said between you and she regarding the taking of the legal title to that property at the time the purchase was made and payments were made?" "Q. BY MR. KLEBER: Tell the court what the agreement was between you and the other party as to how this title was to be taken. A. She suggested the title to be put in my name on account of her own health and the health of the daughter; we had the best doctors that you have here and in Nebraska at that time, we had a very good name there, I believe—— Q. Never mind that. What was done? A. She had the title put into my name. Q. Did you make any agreement with her about transferring to her if she asked for a transfer? A. Yes, that was specifically stated, that at

any time if she wanted it transferred into her own name, I should do it, I would do it." Regarding the second purchase of three lots the testimony is: By plaintiff, "A. I borrowed this money, made the down payment, and told Mr. Campbell to put it in my husband's name, to put it in trust for me." "Q. What did you say was your agreement with your husband when these Lots 71, 72 and 73 were bought, as to taking the title in your name? Was there any agreement?" "Q. BY MR. KLEBER: Did you have any agreement? A. Yes, I told him when I bought them I was going to take them in his name, just the same as 104 and 105 were." Defendant concedes that under the circumstances of this case the ownership of the second group of lots is the same as that of the first group. In some respects the testimony quoted seems inconsistent with the presumption above stated but we cannot say it is so wholly irreconcilable with the presumption that the latter is dispelled, or overcome as a matter of law. The trial court undoubtedly considered this testimony and weighed it against the presumption; its conclusion that the presumption was not overcome was one of fact, which is binding upon us.

The trust here was properly proved by parol evidence. Even though it be regarded as an express trust, orally agreed upon, and in this respect running counter to the provisions of section 852 of the Civil Code requiring a writing for that purpose, plaintiff's husband, who might have objected to its validity on that ground, has, instead, carried it out. The defendant is not, thereafter, in position to assert its invalidity on that ground. (*Polk* v. *Boggs*, (1898) 122 Cal. 114, 116 [54 Pac. 536]; *Nishi* v. *Downing, supra*, (1937) 21 Cal. App. (2d) 1, 3.) Indeed, oral testimony to show a trust other than that resulting by operation of law has been held improper. (*Root* v. *Kuhn*, (1921) 51 Cal. App. 600, 603 [197 Pac. 150].)

The judgment is affirmed.

Schauer, P. J., and Shinn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 1, 1942. Edmonds, J., and Traynor, J., voted for a hearing.