[Civ. No. 4093. Fourth Dist. Apr. 23, 1951.]

JOHN F. LEE, Appellant, v. WILLIAM J. HENSLEY et al., Respondents; MARGARET K. HERSEY, as Administratrix With Will Annexed (Substituted Respondent).

Victor E. Cappa, Fred Rosser, Burum, Young & Wooldridge for Appellant.

Siemon & Siemon for Respondents.

GRIFFIN, J.—This appeal comes to us on the judgment roll alone, consisting of a second amended complaint, a general and special demurrer thereto, and a judgment of dismissal predicated upon an order sustaining the demurrer without leave to amend.

The main question is the sufficiency of the complaint, as amended, to constitute a cause of action. It alleges generally that plaintiff is an Indian member of the Cherokee Indian Nation; that William J. Hensley, hereinafter referred to as defendant, a white man, married plaintiff's mother, Daisy Lee Hensley; that plaintiff lived with them but was not adopted by defendant; that in 1906, when plaintiff was 6 years of age, the government allotted and conveyed to plaintiff three parcels of land in Oklahoma; that defendant applied for and was appointed guardian of the person and estate of plaintiff, and in the petition for guardianship represented himself to the court as the father of the plaintiff. (Defendant and his wife Daisy were divorced in 1918.) Defendants H. J. Hensley, brother of defendant, Rosa Hensley, his brother's wife, Hannah Hensley, who married defendant in 1920, and who subsequently divorced defendant, and Winnifred Barton Hensley, defendant's fourth wife, are each named as defendants herein.

The amended complaint specifically alleges that at the time of defendant's appointment as guardian, he fraudulently conceived and planned and schemed to and did thereafter defraud plaintiff of his property and of its fruits. Then follows over 114 pages of clerk's transcript containing a statement of the alleged acts and conduct of defendant in

relation to the claimed mishandling and misappropriation by defendant of plaintiff's guardianship property and its subsequent investment in other properties, which statements may be summarized as follows: That defendant, after being appointed guardian, moved to California and brought plaintiff and defendant's wife with him so that plaintiff would know nothing of the allotment and of the guardianship proceedings, or of the rents from the property; that defendant filed an inventory and appraisement in the guardianship proceedings purporting to be a true and full inventory of the ward's property but which did not in fact set forth all of the property or its proceeds; that from 1906 to 1910 defendant filed no accounting with the court; that in 1910 he filed a false account and did not include therein rents and profits from the land from 1906 to 1910, which totaled $1,150; that defendant failed to account for $1,710 alleged to have been paid to him as guardian by plaintiff's mother, from her separate property, and for the use and benefit of the ward; that he failed to account for $500 paid by the ward to the guardian, which was money earned by the ward and turned over to the guardian for safekeeping. It is then alleged that defendant did intentionally omit the aforementioned receipts from the said account for the purpose of fraudulently concealing the true facts as to said monies paid and received as aforesaid, from the said court and plaintiff, and for the purpose of fraudulently diverting the whole thereof to his own use and benefit; that these monies were invested by the defendant in his own business enterprises and in the purchase of real property and other valuable properties, i. e., a meat market in Bakersfield, California, etc.; that defendant had no separate property or monies of his own and that at that time neither he nor plaintiff's mother had any community property; that defendant operated the business purchased with plaintiff's monies from 1909 to 1910 at a monthly profit of about $500; that about that time defendant heard from his sister in Oklahoma that there was a current boom in close proximity to plaintiff's lands; that thereupon defendant sold the meat business for the sum of $4,000, went to Oklahoma, and in pursuance of his corrupt plan, performed an additional series of fraudulent acts as hereinafter set forth; that in 1911 defendant, in pursuance of his unlawful plans, filed a document in the court consisting of a verified petition for authority to sell all of plaintiff's real property; that he fraudulently alleged therein that defendant's property was only of a value of $500

when in truth and in fact it had a fair market value in excess of $10,000; that in a petition for sale of the property defendant made false representation as to the necessity for the sale and that at all times defendant intended only to convert the property and the proceeds thereof to his own use, and did in fact do so in the manner set forth, i. e., that defendant fraudulently conspired with certain individuals, including his relatives in Oklahoma, to defraud plaintiff of his three parcels of land, in that he agreed with them that as guardian of the plaintiff he would purport to sell to them all three of the aforesaid parcels of land but in fact would sell them only parcel three at a figure less than one-half of its then actual fair market value and that he would secure a confirmation of the purported sale of all three parcels and that the other parties orally agreed with him that in consideration of his selling them the said parcel at said figure, each would pose as a bona fide purchaser of all three parcels but after the confirmation of the sale they would divide the parcels among themselves so that they would keep parcel three and parcels one and two would be reconveyed to defendant without paying them anything for said reconveyance; that thereafter a decree was entered authorizing the sale; that an additional bond was required and that the coconspirators furnished such bond; that this bond was at all times worthless and known by defendant to be worthless; that thereafter defendant filed a return of sale and falsely recited that he had sold the property to the relatives indicated for $1,160, but that on June 12, 1911, certain purchasers executed quitclaim deeds to defendant in the names of W. J. Hensley to two parcels of the land formerly owned by the ward and without consideration; that defendant, with intent to avoid suspicion, did not record the quitclaim deeds issued to him until about one year thereafter; that defendant has never accounted to the court nor to the plaintiff for the fair market value of parcels one and two, and that the defendant sold the same and converted the proceeds to his own use and benefit; that in 1910 defendant, out of the monies of the plaintiff unaccounted for and converted by him for his own use, gave his brother H. J. Hensley $2,000 and told him to hold it for him for defendant's use and benefit; that H. J. Hensley knew that the said money belonged to plaintiff and that it had been embezzled and converted by defendant, as aforesaid.

It is then alleged that defendant guardian fraudulently omitted from his account filed in 1911, $150 paid to him as

rents for the property for the year 1906, and the sum of
$920.33 rentals for said property paid to 1911, and the further
sum of $1,710 claimed to have been given to defendant by
plaintiff's mother for the use and benefit of plaintiff as afore-
said; that he fraudulently omitted from said account approxi-
mately $500 of plaintiff's earnings claimed to have been given
to defendant for the use and benefit of the plaintiff as afore-
said; that he omitted from said account the profits and pro-
ceeds from the operation and sale of the Bakersfield meat
market; that he omitted to account for the money received
from the sale and conversion of the two parcels of real estate
valued in excess of $10,000; that defendant intentionally
omitted these receipts from the account for the purpose of
fraudulently concealing the true facts as to said monies paid
and received as aforesaid from the said court and plaintiff,
and for the purpose of fraudulently diverting the whole
thereof to his own use and benefit. It is then set forth that
in 1913 the court served defendant guardian with a citation
commanding him to file reports in that court. A purported
account was filed which omitted the items aforementioned.
It is then alleged that there was paid to defendant, during
that period, the sum of $133.19, which he received from the
Bureau of Indian Affairs, which was plaintiff's Immigrant
Cherokee pay; that defendant failed to account for this item;
that the court discovered certain false and fraudulent charges
against the estate, disallowed them, and not knowing about
the facts here related, ordered the account settled and found
that a balance of $937.30 was due to the ward. Then follows
an allegation that in November, 1913, the court served de-
fendant with a citation ordering him to file a new bond, which
he failed and refused to do; that in 1914 the guardian filed
an account which purported to be an account of all his acts
and doings as guardian and of the receipts and disbursements
of money for and on account of his ward; that this account
did not show the $937.50 balance charged the defendant in his
previous account; that said account was otherwise false be-
cause of the fact that it did not correctly set forth the other
items above mentioned which plaintiff believed to be in excess
of $17,343.19. Objections are made to other items contained
in this account. Then follows the allegation that in Novem-
ber, 1914, the court made an order disapproving said account,
revoked defendant's letters of guardianship, and ordered de-
fendant to file a final account within 20 days and turn over
to the new guardian the proceeds of the minor's estate; that

defendant refused to obey the order or account for said sums; that defendant has never been discharged by the court as guardian of plaintiff's property nor exonerated from liability to account; that in 1911 defendant purchased with the funds of plaintiff a certain business, a butcher shop in Bakersfield, which was operated by defendant and his brother, H. J. Hensley, from 1911 to 1931, at a considerable profit; that it was sold for a considerable sum sufficient, together with other monies converted by the defendant, to enable defendants William J. Hensley and H. J. Hensley to buy certain valuable parcels of real property in Bakersfield, more particularly described in the complaint. It is alleged that this property was held by H. J. Hensley and his wife for the use and benefit of defendant since 1911. (It developed that some of this property so purchased was discovered to be oil-bearing land and became quite valuable.) It is then alleged that at all times defendants and each of them were familiar with the facts alleged and that these funds and properties rightfully belonged to the plaintiff; that in 1920 defendant gave to his then wife, Hannah Hensley, an interest in the meat market business which was purchased out of plaintiff's funds as aforesaid, and that at that time she well knew that defendant had purchased said business with the funds of plaintiff.

Then follows the general allegation that plaintiff never had an opportunity to be present at any of the hearings or proceedings in the guardianship matter, all of which occurred during the period when he was 6 years of age and up to the age of 15 years, and that on June 27, 1947, he first learned that he had been a ward of the defendant as guardian, and that he then first learned that the defendant was not his natural father. The complaint then sets out a set of facts which he claims prevented the running of the statute of limitations alleged in defendant's demurrer to the amended complaint, i. e., that the action was barred by sections 338, subdivision 4, 319, 328, 336, 337, subdivision 2, and 343, Code of Civil Procedure, i. e., that because of a quarrel between the defendant and his brother, on June 27, 1947, some of the facts hereinbefore set forth came to light for the first time; that the plaintiff, for the first time, became suspicious of his guardian and began an investigation which disclosed the true facts alleged. The circumstances surrounding the quarrel are fully alleged. Plaintiff then charged that defendant, at all times mentioned, dominated the plaintiff, gave him false information, and told him nothing of his property or the rights he had acquired

through the government; that he turned him against his mother so he would not obtain information from her; that he led him into believing he should be confined in Preston School of Industry under the guise that it was a good school for the training of boys; that he was then committed to Ione until he was 18 years of age. Several paragraphs contained a long dissertation of claimed additional reasons why plaintiff was prevented by defendant from making an investigation of any kind or from tracing any of the funds converted by the defendant into the reinvestments made by him as aforesaid; that since 1910 these defendants wilfully, fraudulently and wickedly agreed and conspired with each other to cheat and defraud plaintiff of his property and monies as aforesaid. Then follow certain facts upon which the conclusion is reached that plaintiff did not discover these facts until June 27, 1947. It is then alleged that the defendants and each of them hold, as involuntary trustees for the use and benefit of the plaintiff, all the properties above set forth, together with all the income, rents, dividends, oil royalties and substitutions therefor. Plaintiff seeks an accounting and an order that said property ·be restored to plaintiff.

Several exhibits are attached to the complaint in support of its allegations.

In addition to the claim that the cause of action is barred by the statute of limitations, it is also defendant's argument that the allegations of the complaint are not sufficient to suspend the running of the statute, citing such cases as *Thomas* v. *Murray*, 174 Okl. 36 [49 P.2d 1080, 104 A.L.R. 209]; 54 Corpus Juris Secundum 249, section 215; *Scafidi* v. *Western Loan & Building Co.*, 72 Cal.App.2d 550, 555 [165 P.2d 260]; *Bogart* v. *George K. Porter Co.*, 193 Cal. 197, 201 [223 P. 959, 31 A.L.R. 1045]; and *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809].

Defendant concedes in his brief that if a cause of action is stated, the statute did not commence to run until plaintiff reached the age of majority and until he obtained knowledge of the fraud.

The true rule is prescribed in section 19, Civil Code:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

■ The statute commences to run after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. (*Scafidi* v. *Western Loan & Building Co., supra,* citing *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958].) ■ However, in cases involving a fiduciary relationship between the parties at the time of the alleged fraud, facts which would ordinarily require investigation may not excite suspicion, and the same degree of diligence is not required. (*Hobart* v. *Hobart Estate Co., supra.*)

■ We are immediately confronted with the rule that a demurrer admits the truth of all allegations which are well pleaded, however improbable the facts may be. (*Woodroof* v. *Howes,* 88 Cal. 184 [26 P. 111] ; *Hitson* v. *Dwyer,* 61 Cal. App.2d 803 [143 P.2d 952].)

■ Assuming, as we must, the truth of the allegations pleaded in reference to the concealment of facts and the time of discovery of the fraud, it appears to us that such allegations are sufficient to toll the running of the statute of limitations as to certain items. Whether, on a trial, plaintiff can establish these facts is not the question before us. (*Miller* v. *Ash,* 156 Cal. 544 [105 P. 600] ; *Daniel* v. *Tolon,* 53 Okla. 666 [157 P. 756, 4 A.L.R. 704] ; *Tilley* v. *Brady,* 323 Mich. 547 [36 N.W.2d 140] ; *Lataillade* v. *Orena,* 91 Cal. 565 [27 P. 924, 25 Am.St.Rep. 219] ; *Gillette* v. *Wiley,* 126 Ill. 310 [19 N.E. 287] ; *Gaver* v. *Early,* 58 Cal.App. 725 [209 P. 390] ; *Mortimer* v. *Loynes,* 74 Cal.App.2d 160 [168 P.2d 481] ; *Bowman* v. *McPheeters,* 77 Cal.App.2d 795 [176 P.2d 745] ; 39 C.J.S. § 153(b), p. 256, and cases cited; *Cook* v. *Ceas,* 143 Cal. 221 [77 P. 65] ; *Sears* v. *Rule,* 27 Cal.2d 131 [163 P.2d 443].)

Defendants seek to avoid the effect of the allegations of plaintiff's second amended complaint in respect to the claim that plaintiff had no knowledge of the facts of fraud until 1947, because of the claimed fact that in plaintiff's original complaint, drawn by another attorney, he made certain statements inconsistent with his present allegations and accordingly this court, as well as the trial court, was not bound to accept as true allegations contrary to admissions in former pleadings in the same case, citing *Tieman* v. *Red Top Cab Co.,* 117 Cal. App. 40, 45 [3 P.2d 381] ; *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358] ; *Zakaessian* v. *Zakaessian,* 70 Cal.App.2d 721 [161 P.2d 677] ; and *Treager* v. *Friedman,* 79 Cal.App.2d 151, 172 [179 P.2d 387].

The only record on appeal requested by the plaintiff and which is before this court, is the second amended complaint, the demurrer thereto, and the judgment of dismissal. Defendant, in his brief, refers to the original complaint and some of its allegations and argues that those allegations are inconsistent with the allegations of the second amended complaint.

Defendant insists that the trial court, in ruling on the sufficiency of the second amended complaint, had the right to take into consideration admissions made in the former pleadings and accordingly, on this appeal, he moved, over objections, that the original complaint, the first amended complaint, and the demurrers thereto, together with the rulings thereon, be made a part of the record on appeal. This motion was submitted in connection with the appeal on its merits and was granted.

We have carefully examined these documents. In the second amended complaint the plaintiff claims he was ignorant until 1947, of (a) his parentage and racial connections; (b) his acquisition of Indian lands; (c) receipts by defendant from plaintiff's estate; (d) existence of guardianship; (e) investment of plaintiff's money in California property; and (f) that plaintiff owned any interest in the Kern County lands.

The original complaint, verified by plaintiff, alleged generally, that in *1910*, prior to leaving the State of Oklahoma, "defendant guardian falsely represented to plaintiff and his mother that there existed in the State of Oklahoma, several parcels of land which really belonged rightfully to defendant guardian, as he had put up the purchase price therefor but which were actually in the name of plaintiff's mother, in trust for the children, Floyd L. Hensley, Ethel L. Hensley, and William J. Hensley, Jr. . . . that said lands were valuable oil lands" and the "taxes were 'eating them up' "; that if defendant guardian did not do something about it the property would be "lost to defendant guardian and his family, including the plaintiff herein"; that defendant told plaintiff "that he had had a lot of correspondence with important people in Oklahoma and knew that the only way anything could be done was for himself, defendant guardian to go direct to Oklahoma and start a Court action to 'probate' said lands"; that in *1917*, "defendant guardian falsely represented to this plaintiff . . . that said Daisy Lee Hensley had fraud-

ulently used and expended for her own purposes, all the rents and profits from this plaintiff's Indian Lands which had been in her name" but that the defendant guardian "had 'raised some money' on plaintiff's Indian Lands in Oklahoma and had purchased for this plaintiff certain property then known as 'the slaughter house property', more fully described as . . . All of Lot 8 . . ." and "that he, defendant guardian, would protect said property for this plaintiff, from plaintiff's mother, and turn it over to this plaintiff when plaintiff reached the age of 21 years and that plaintiff should never tell anyone he, the plaintiff, owned said Lot 8 or that defendant guardian was holding said Lot 8 in trust for said plaintiff . . .; that in truth and in fact said W. J. Hensley, defendant guardian herein, did purchase said Lot 8 by using funds and monies he held in trust for plaintiff, but put the title in the names of W. J. Hensley and H. J. Hensley, defendants herein, and had no intention of ever turning said property over to plaintiff, as defendant guardian then well knew; that all of defendant guardian's representations *(made in December, 1917)* as aforesaid were false and untrue as defendant guardian then well knew."

It is then alleged that in *September, 1919*, within a few days after plaintiff attained the age of majority, he did, in *February, 1920*, "write a letter to defendant guardian in Bakersfield, . . . requesting assistance of defendant guardian, whom he still believed to be his natural father, and further making respectful inquiry regarding whether or not defendant guardian was able to return to him, plaintiff herein, or to deliver to plaintiff herein, any of the monies or properties hereinbefore mentioned in accordance with the promises of defendant guardian, as aforementioned; said written letter being made by plaintiff as an informal request for information and not as a formal or legal demand, as plaintiff herein still had the utmost respect for and confidence in defendant guardian"; that in *March, 1920*, defendant guardian called on plaintiff in Fresno and presented plaintiff with what purported to be an account of plaintiff's earnings from wages and purporting to show a balance due to plaintiff herein of approximately $50. It is then alleged that at that same time (1920) defendant guardian told plaintiff that Daisy Lee Harris was trying to "get everything that Hannah Hensley, wife of defendant guardian then owned, and everything that H. J. Hensley, brother of defendant guardian owned, and was also trying to get this plaintiff's Lot 8; that plaintiff's Indian

Lands didn't matter much anyway, as, 'the best of them went into Lot 8 anyway' and that plaintiff and defendant guardian said W. J. Hensley, had better forget the balance of the Indian Lands as, 'they're not worth monkeying with or fretting about' ''; that defendant told plaintiff (in *1920*) to take no action in reference thereto but to assist defendant in defending the litigation then pending against defendant, brought by his wife (see *Harris* v. *Hensley*, 83 Cal.App. 283 [256 P. 832] ; and *Harris* v. *Hensley*, 214 Cal. 420 [6 P.2d 253] ) ; that defendant guardian at that time (1920) promised to show plaintiff the results of an investigation made in Oklahoma in reference thereto as soon as his attorneys had completed investigation, and that defendant thereafter falsely produced and exhibited to plaintiff papers and documentary proof that plaintiff's mother had fraudulently dealt with the plaintiff's before-mentioned Indian lands and was probably guilty of the crime of forgery. It is then alleged that in the year *1932* defendant guardian showed plaintiff what purported to be a full and true account of defendant guardian's dealings throughout the preceding period of 20 odd years between defendant guardian and defendant guardian's brother and his wife, and further showed, by said purported account and other documents and deeds then of record in Kern County that defendant H. J. Hensley and Rosa Hensley were the sole owners of said Lot 8, and that no property stood of record in the name of defendant guardian.

Notwithstanding his allegation in the second amended complaint that he had no knowledge of these transactions until 1947, it appears in plaintiff's original complaint, as verified by him, that he did have knowledge of the Oklahoma property and of defendant's dealings with it since *1910*, and at various times thereafter he discussed the matter with defendant. It further appears that in 1917 defendant told him that he had invested the proceeds in Lot 8 and would turn it over to plaintiff when he reached 21 years of age. It also appears that plaintiff made *demand* on his *guardian* in 1920 for a report. No action was thereafter taken for over 12 years when, in 1932, it is alleged that defendant presented plaintiff with what purported to be a full and true account of the guardian's dealings over a period of 20 years. It is apparent that he had knowledge at that time that his claimed money had gone into Lot 8.

Plaintiff's excuse for his inaction, reiterated many times in his complaint, is that he believed defendant to be absolutely

"penniless" and utterly incapable of being compelled to respond in legal form. ▮ In other words, the general fraud alleged and relied upon in the first complaint is not the concealment of property, but rather the misrepresentation of the guardian as to his, the guardian's financial inability to make good on the known obligation. The representation as to such a matter is not such a representation as would toll the statute of limitations. (54 C.J.S. p. 249, § 215; *Thomas* v. *Murray, supra.*) Furthermore, the allegations of the complaint, in effect admit that in *1917* defendant acknowledged the trust and promised to convey the proceeds to plaintiff upon his reaching majority, and that in February, *1920*, plaintiff did make a demand for an accounting, although he alleged that it was "not a formal or legal demand." No action was taken thereafter in reference to this accounting until 1949.

The pleadings set forth in the second amended complaint may be considered as dealing with the alleged misappropriation of two general funds: (1) the funds derived from the Oklahoma guardianship and which are alleged to have been acquired by conversion of money defendant is alleged to have received in Oklahoma; and (2) monies which defendant is alleged to have received from plaintiff and plaintiff's mother after the family came to California.

As to the alleged earnings of plaintiff which he claims were turned over to defendant, it cannot be said that plaintiff did not have knowledge of this fact at the time. This occurred many years ago and it cannot be said, under the pleadings, that the statute of limitations has not run on this alleged claim.

In relation to the items which amount to a collateral attack upon the guardianship proceedings in Oklahoma, plaintiff may not disturb the judgment or order of that court in this proceeding. (*Fealey* v. *Fealey,* 104 Cal. 354 [38 P. 49, 43 Am.St.Rep. 111] ; *La Salle* v. *Peterson,* 220 Cal. 739 [32 P.2d 612] ; *O. A. Graybeal Co.* v. *Cook,* 16 Cal.App.2d 231 [60 P.2d 525].)

▮ In effect, plaintiff, in his first complaint, made allegations that were sufficient to show that plaintiff had knowledge of sufficient facts prior to 1947 which would bar a recovery under the statute of limitations. The demurrer to the first complaint was sustained on that ground. To avoid these previous allegations, which would bar a recovery, plaintiff, by the second amended complaint, reverses his position, omits many of the facts and dates set out in his first verified com-

plaint which would preclude a recovery, and alleges that he had no knowledge of the surrounding facts until 1947.

■ The rule is that a defect in a verified complaint, by reason of an allegation which renders it vulnerable, cannot be cured simply by omitting the allegation without explanation in a later pleading. (*Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]. See, also, *Williamson* v. *Joyce,* 137 Cal. 151 [69 P. 980]; *Neet* v. *Holmes,* 25 Cal.2d 447 [154 P.2d 854].) Facts once alleged cannot be withdrawn from consideration by merely filing an amended pleading omitting them without explanation. ■ Accordingly, the court was fully justified in examining and considering the original complaint. (*Neal* v. *Bank of America,* 93 Cal.App.2d 678, 682 [209 P.2d 825].)

In *Slavin* v. *City of Glendale,* 97 Cal.App.2d 407, 411 [217 P.2d 984], the court adopted the language: ". . . 'appellant should not be allowed to breathe life into a complaint by omitting facts, previously alleged in a verified pleading, which made it fatally defective.' "

Considering the allegations of the original complaint as to when plaintiff acquired knowledge of certain alleged facts, which allegations are omitted from the second amended complaint, we must conclude that the purpose of the amendment was to avoid the effect of the allegations of the original complaint. Since the trial court properly ruled that the alleged cause of action set forth in the original complaint was barred by the statute of limitations, no error resulted in a similar ruling as to the second amended complaint.

Defendant William J. Hensley died shortly before this appeal was perfected. An order has been made substituting his administratrix with the will annexed, Margaret K. Hersey, as defendant and respondent on this appeal.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 15, 1951, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1951.