[Civ. No. 17338.   Second Dist., Div. One.   Feb. 7, 1950.]

J. HASKEL KRITZER, Appellant, v. FRED W.
LANCASTER et al., Respondents.

A. V. Falcone for Appellant.

Adams, Duque, Davis & Hazeltine and Charles E. Stimson, Jr., for Respondents.

DRAPEAU, J.—Plaintiff appeals from a judgment of dismissal made under the provisions of subdivision 3, section 581, Code of Civil Procedure.

Appellant elected to stand on his complaint following the sustaining of respondents' general and special demurrer with leave to amend, and after his motion to vacate said ruling and to rehear the demurrer had been denied.

The action is for an accounting of money turned over to respondents by appellant pursuant to an oral agreement between them.

The complaint stripped of much of its verbiage alleges that respondent partnership is a stockbroker and a member of the Los Angeles Stock Exchange; that respondent Lancaster is employed by said broker as a salesman of securities; that appellant and said Lancaster have been friends and confidants since 1930, and that appellant "reposed great confidence in said defendant's friendship, integrity and business judgment, particularly . . . with regard to safe investments in corporate securities; that all said facts were at all times herein alleged known to defendants Lancaster and Broker."

Further, that in February, 1945, when appellant was 60 years of age and in ill health, with only $30,000 left of sub-

stantial sums earned in the practice of his profession and other pursuits much of which had been lost through unfortunate investments, the *parties made an oral agreement:* that appellant should have a qualified person to invest the $30,000 in such investments as could be readily converted into cash, so as to protect the principal and afford some return to appellant, but "never with the object of speculative gain." That respondents solicited appellant that they be the persons to attend to such investments for him; that because of appellant's great confidence in respondents and their experience in the investment field, he accepted their offer; that in order to carry out said plan, it was required that appellant open an account with broker, so that respondents could invest his money in select corporate securities under their constant supervision and advice "giving plaintiff their expert knowledge and advice, paying cash for said securities, never dealing on margin or credit and acquiring said securities for plaintiff as the owner thereof outright, keeping all said securities segregated and ear-marked as plaintiff's property and keeping them with said defendants so that they could be readily available for dealing by them for plaintiff, said defendants to so invest plaintiff's money only in safe and proven securities in corporations and industries of which said defendants had complete personal knowledge and means of such knowledge regarding said corporations and industries and the economic soundness and value of said securities and always for plaintiff's best interests and to protect his principal."

That relying on said agreement and his confidence in respondents, appellant opened an account with broker in February, 1945; that thereafter until June, 1947, respondents bought and sold securities for appellant, who paid them various sums of money, as requested, and executed numerous powers of attorney, stock powers and other authority for the purchase and sale of said securities by respondents; that at all times, respondents had sufficient money and securities belonging to appellant to buy and sell for cash without necessity of credit or margin; that appellant never had an account with defendants on margin and never obtained from, nor requested that credit be extended to him.

That during the period in question, respondents continually stated and represented to appellant that they were buying and selling for him the best and safest securities; that they had personal knowledge of the economic soundness and value thereof and of the respective corporations and industries

represented thereby; that they were continuously supervising and directing his account and their purchase and sale of securities for him; that he should and could rely upon their experience and knowledge and the fact that they were investing his money ''only in such securities''; that appellant at all times believed said statements and representations and relied thereon, as respondents were well aware.

That said alleged statements and representations were false and known to respondents to be false when made; that they were made for the purpose and with the intention of deceiving appellant ''into believing the same and to therefore rely thereon,'' so that he would continue to permit respondents to handle his money for their own profit and gain. That respondents made numerous transactions purportedly for the best interest of appellant in accordance with the aforesaid agreement, but in fact for their own gain and profit in that they knowingly bought and sold speculative and unsound securities with appellant's money, thereby making secret profits and other gains without informing appellant or accounting to him therefor.

That such conduct of respondents resulted directly in a decrease of appellant's capital and money and the use thereof and a loss in his said account, the total of which is unknown to him, but is known to respondents; that appellant alleges on information and belief that said total loss exceeds $10,000, and that the amount of secret profits made by respondents exceeds $2,000.

That in September, 1946, appellant's capital and money began to decrease as a direct result of respondents' alleged misconduct, and appellant from time to time inquired the reason for such decrease, whereupon respondents repeatedly stated to him that the situation was temporary and due to technical market conditions and not attributable to any unsafe or unsound condition of the securities involved; that he could rely upon their knowledge and experience ''to protect his principal and that his money and account were under their constant supervision and direction and would not be jeopardized or permanently decreased in value; that plaintiff believed said statements and representations and relied thereon, which fact was at all times known to said defendants; that said statements were false and known by said defendants to be false when made by them and were made by them for the purpose and with the intention of inducing plaintiff to believe the

same and to rely thereon and to therefore continue to permit said defendants to so deal with his money and account.''

That about September 5, 1947, appellant obtained independent legal advice and for the first time ascertained that respondents had ''bought and sold securities purportedly for him not only as his agents but as defendant Broker's own principal and together with other principals,'' and also for the first time learned that the securities so purchased and sold by respondents on his behalf were speculative and unsound and that the corporations and industries represented thereby were also unsound; that about October 3, 1947, appellant obtained his current securities from respondent broker and closed his account; that the market value of appellant's said securities at that time totaled approximately $15,000.

That thereupon appellant requested respondent broker to account to him in full for all transactions purportedly conducted for him and with his money; that on November 14, 1947, respondent broker furnished appellant with some incomplete information regarding his said account from which appellant for the first time learned that respondent broker made secret profits from its transactions with his money; that respondents have never fully accounted to appellant ''for all their said acts and conduct relative to his said money and account.''

The complaint then prays ''for an accounting of all acts and conduct by defendants with plaintiff's money and account with defendant Broker and of all transactions conducted by defendants for plaintiff, either as his agent, defendant Broker's own principal or otherwise''; that the profits and gains made by respondents therefrom be determined, as well as appellant's losses and that judgment be rendered for such amount as the court may determine is due and payable to appellant.

Respondents interposed a general demurrer to the complaint and also demurred specially upon the following grounds:

1. That the complaint contains several alleged causes of action without separately stating them;

2. That the complaint is uncertain, ambiguous and unintelligible in 26 stated particulars.

It is here contended that the demurrer was erroneously sustained, it being urged that on an appeal from a judgment sustaining a demurrer the allegations of the complaint must be taken as true (*Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 41 [172 P.2d 867]); that pleadings should be read as a whole and must be liberally and reasonably inter-

6

preted (*Hudson* v. *Craft*, 33 Cal.2d 654, 661 [204 P.2d 1, 7 A.L.R.2d 696]); and that a liberal construction of the complaint is required by section 452 of the Code of Civil Procedure, with a view to substantial justice between the parties.

Respondents on the other hand argue that the applicable rule in the instant case is stated in *Metzenbaum* v. *Metzenbaum*, 86 Cal.App.2d 750, 752-3 [195 P.2d 492], to wit:

"Upon appeal from a judgment rendered after refusal to amend a complaint to which a demurrer has been sustained, it must be presumed that the pleader has stated his case as strongly as it can be stated in his favor and all ambiguities and uncertainties must be resolved against him."

In the case of *Hudson* v. *Craft*, 33 Cal.2d 654, 661 [204 P.2d 1, 7 A.L.R.2d 696], cited by appellant, which was an appeal from a judgment of dismissal because of plaintiffs' failure to amend their complaint, after a demurrer thereto was sustained with leave to amend, the Supreme Court applied the rule of liberal construction and "are able to say that defendants were sufficiently apprized of the issues to be met. (See *Lord* v. *Garland*, 27 Cal.2d 840 [168 P.2d 5].)"

While appellant urges that it was understood by all parties that the judge who ruled on the demurrer would specify the grounds upon which it was sustained and thus simplify the matter of amending the complaint, the order made is general in its terms and does not indicate the grounds upon which the court acted.

As to this point, it is stated in 2 California Jurisprudence, section 477, page 811: "Furthermore, the code contemplates a general order alone. Any matter inserted in the order other than the decision for or against the demurrer is surplusage and not to be regarded. The question always is: Ought the demurrer to have been sustained?"

It is a well-established rule that an action for an accounting is a matter of equity jurisdiction. Frequently a case presents a fiduciary relation between the parties in the nature of a trust which brings it especially within equitable remedies. (1 Cal.Jur. § 28, p. 168.)

Moreover, where the allegations of the complaint "show that the defendant was the trusted agent of the plaintiff, acting in a fiduciary capacity, and having for a long period of time the entire charge and control of plaintiff's business, and that by various kinds of misconduct which are specially described, defendant caused losses and became liable in various sums of money, the true amounts of which cannot be

ascertained and determined without an accounting, there is sufficient ground for an accounting in equity." Citing *San Pedro Lumber Co.* v. *Reynolds,* 111 Cal. 588 [44 P. 309]; *Brea* v. *McGlashan,* 3 Cal.App.2d 454 [39 P.2d 877]. (1 Cal. Jur. § 37, p. 178.)

Analyzing the allegations of the complaint hereinabove briefly summarized, they aver (1) a confidential relationship; (2) an oral agreement pursuant to which respondents became the trusted agents of appellant to handle his money and invest the same in sound securities for his benefit; (3) misconduct of respondents who, contrary to the terms of the agreement, bought and sold speculative and unsound securities with appellant's money for their own gain and secret profit; (4) resulting loss to appellant which cannot be ascertained without an accounting, the means of which are within the knowledge of respondents.

These averments liberally construed sufficiently state a cause of action in equity for an accounting and are good as against a general demurrer.

With respect to the special demurrer on the grounds that the complaint contains several causes of action which are not separately stated, and that it is uncertain, ambiguous and unintelligible, while many of the allegations therein contained could be made much more definite and certain, it is rather clear that it states a cause of action for an accounting as it appears that a relationship exists which requires an accounting and that there is something due to appellant from the respondents.

Moreover, viewed in the light of the holding in *Brea* v. *McGlashan,* 3 Cal.App.2d 454, 459-460 [39 P.2d 877], hereinafter quoted at length, we believe that appellant has stated his cause of action with sufficient particularity as to entitle him to a trial on the merits:

"Our system of pleading aims at certainty. Uncertainty is made a ground of demurrer . . . The objection of uncertainty does not go to the failure to allege sufficient facts. It goes to the doubt as to what the pleader means by the facts alleged. (Citing authorities.) The first count of the complaint was, in reality, a cause of action for an accounting. Under our system of pleading, a cause of action for accounting need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff. (*Whann* v. *Doell,* 192 Cal. 680, 684 [221 P. 899].) Ordinarily, no accounting is necessary be-

tween an employer and an employee. But where, as here, the payment is alleged to be in the form of a percentage of the moneys received by the employer, and the complaint alleged that the plaintiff did not know what moneys had been received through contracts procured by her, an accounting would be the only method of arriving at the amount due. (See *Arbuckle* v. *Clifford F. Reid, Inc.,* 118 Cal.App. 272, 275 [4 P.2d 978].) A pleader is not required to state facts which are peculiarly within the knowledge of his opponent. Here, the complaint alleged sufficiently the employment, the manner of compensation, the performance of services showing *some* compensation to be due, and the fact that the correct amount could not be ascertained without an accounting. The additional allegation that the amount due was $8,000 was surplusage. Its inclusion did not make the complaint uncertain. Nor did it (as claimed by the defendant) render the count vulnerable, as stating two causes of action, without stating them separately. In *San Pedro Lumber Co.* v. *Reynolds,* 111 Cal. 588 [44 P. 309, 312], which was an action for an accounting against an agent, the complaint alleged various acts of misappropriation of moneys and property by the agent, and various acts of misconduct which resulted in losses to the principal, and prayed for an accounting to determine the exact liability. Overruling the contention that these allegations were uncertain, and that several causes of action were stated in one count, the court said:

" 'Such, then, being the nature of the action, and the facts averred warranting the institution of such an action, the points made by appellant that each averment of acts of misconduct by appellant constitutes a separate cause of action which cannot be properly joined with either of the others, and that the complaint is uncertain, etc., because it does not state more particularly how each item of alleged liability arose, when it was created, and especially its amount, cannot be maintained. The purpose of the action was to call appellant to an accounting touching matters peculiarly within his knowledge and arising out of the trust reposed in him; and we think that for this purpose the cause of action is stated with sufficient particularity. ' (*West* v. *Brewster,* 1 Duer (8 N.Y.Super.Ct.), 647; *Green* v. *Brooks,* 81 Cal. 333 [22 P. 849]; *Rippe* v. *Stodgill,* 61 Wis. 38 [20 N.W. 645]; *Colonial etc. Mortgage Co.* v. *Hutchinson Mortgage Co.,* 44 F. 219.) And the character of the complaint is not changed by the averment that before the commencement of the action an

investigation had shown that the respondents had suffered a loss of "upward of sixty-five thousand dollars." '

"We conclude that the demurrer upon the ground of uncertainty and misjoinder was properly overruled."

For the reasons stated, the judgment is reversed, with directions to the trial court to overrule the demurrer and allow respondents a reasonable time within which to answer the complaint if they be so advised.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied March 6, 1950, and respondents' petition for a hearing by the Supreme Court was denied March 30, 1950.