[Civ. No. 22958. Second Dist., Div. One. May 12, 1958.]

BILL TOSTEVIN, Appellant, v. JACK DOUGLAS et al., Respondents.

322

Arthur M. Applebaum for Appellant.

I. B. Kornblum and David H. Kornblum for Respondents.

LILLIE, J.—This is an appeal from a judgment of dismissal following an order granting a motion to strike plaintiff's third amended complaint.

Plaintiff filed an action for declaratory relief and accounting on January 21, 1957. Thereafter he filed three verified amended complaints. In substance, they alleged that under an oral agreement entered into in May of 1954, defendants em-

ployed plaintiff to solicit and procure personnel and material for a series of travelog television shows at a fixed salary of $50 per week and that defendants repudiated the agreement and refused to be bound by it. Demurrers to the original, first and second amended complaints were sustained with leave to amend. Demurrer to the second amended complaint was sustained with directions that "to the extent that allegations vary from those in previous verified complaint, such variation must be explained." A third amended complaint was filed and the trial court granted defendants' motion to strike, "no substantial amendment having been made and no explanation having been made of changes from former complaint." The plaintiff having made no further amendment, the trial court entered its judgment of dismissal from which this appeal is taken.

Appellant urges reversal of the judgment on the ground that the trial court abused its discretion in granting the motion to strike the third amended complaint and in ordering a dismissal of the action.

A review of the record discloses numerous changes in essential averments in the amended pleadings, none of which were ever explained or accounted for by the pleader. These unexplained changes constitute omissions, variations and contradictions in material allegations relating to the services required to be performed by plaintiff under the oral agreement, the termination date thereof and the time of defendants' repudiation.

Referring first to the services plaintiff was required to perform, the original complaint alleged that all services under the agreement were to be paid for by defendants—in the first amended complaint, all were to be performed voluntarily without compensation—and in the second and third amended complaints, only his services in securing personnel and material were to be paid for. More specifically, in his original complaint, plaintiff was to "solicit, procure and obtain personnel and material" for a series of travelog shows and "to conduct, supervise, prepare and produce the publicity and advertising of such travelog shows," for which "such services" he was to receive $50 per week. In the first amended complaint, plaintiff alleged that under the oral agreement his services of "conducting, supervision, preparation and production of publicity and advertising of and for said travelog shows, was agreed by said parties to be entirely voluntary upon the part of the plaintiff," for which he was not to be

paid; and in the next paragraph further alleged that his sole duties under the agreement "were to contact such personnel and locate such material and refer such personnel" to defendants, "except, that plaintiff was to perform such duties upon a voluntary basis, without compensation." A fair reading of this complaint leaves plaintiff without compensation for any services to be performed under the agreement. The second and third amended complaints eliminated any reference to publicity and advertising; completely ignored the allegation in the first amended complaint that plaintiff's services of contacting personnel and locating material were to be voluntary and without compensation; and alleged that plaintiff was to be paid for them at a salary of $50 per week.

In a similarly ambiguous and contradictory state we find plaintiff's allegations relating to the time of defendants' repudiation of the agreement. In both the original and first amended complaints, plaintiff alleged that since May, 1954, immediately after the agreement was entered into, defendants refused to recognize plaintiff as the solicitor of personnel and material and as the producer of advertising and publicity under the agreement; and since May, 1954, refused to deal further with him. Plaintiff in his second and third amended complaints presented an entirely new version of when the repudiation took place, completely omitting any reference to prior allegations that defendants repudiated the agreement since May, 1954, and alleged for the first time that from May, 1954, to October, 1955, plaintiff performed certain services under the agreement and "That *thereafter* plaintiff demanded his compensation pursuant to said agreement, but the defendants refused to meet such demands." (Emphasis added.)

These variations and omissions are most serious because of the application of the statute of limitations. Plaintiff in his original complaint and first amended complaint swears that defendants repudiated the agreement since May, 1954, immediately after it was entered into; and in his second and third amended complaints, without any explanation therefor, he advanced the date of repudiation to October, 1955, a year and five months later. It is immediately obvious that, if plaintiff is to be bound by the allegations of fact in his prior verified complaints, if he had a cause of action for breach of the oral agreement, it was barred by the two-year statute of limitations when the original complaint was filed on January 21, 1957.

Equally serious are plaintiff's changes in various allegations relating to the termination date of the agreement. In

his original complaint he alleged he was to receive compensation for his services in the sum of $50 per week, commencing June 1, 1954, and "continuing for an indefinite period" as long as the personnel and material procured by plaintiff are used on television throughout the world; and that defendants have been producing shows since May, 1954. No reference was made in this complaint to the term of employment under the agreement. Plaintiff's first amended complaint alleged that his "said employment was to continue for an indefinite period of time" to be determined by the length of time the series is shown on television and that his compensation of $50 per week was to continue for the same "indefinite period." Plaintiff in his second amended complaint eliminated the phrase "for an indefinite period of time" in connection with his employment and compensation and added a new account of how and when the agreement could be terminated. He alleged that his employment was to continue as long as the series was acceptable to and exhibited on television stations, either on a sustaining basis or as a commercial show paid for by a commercial sponsor; and for the first time plaintiff alleged that his services shall "continue until terminated by mutual agreement." His compensation for such services was to continue as long as the shows were exhibited on television. He also alleged that since May, 1954, defendants have been producing the series. The third amended complaint used the exact wording of the second except plaintiff added the following: "In other words, the plaintiff and the defendants agreed that as long as said series of travelog shows were marketable in that one or more commercial sponsors would show them for a consideration to be paid to the defendants, the plaintiff was to continue searching for, and continue to solicit, procure and obtain personnel and material for such series of travelog shows and the exhibition thereof as aforesaid." In the next paragraph with reference to compensation, plaintiff followed the wording of the second amended complaint, but added this language: "In other words, the plaintiff and the defendants agreed that as long as said series of travelog shows were marketable in that one or more commercial sponsors would show them for a consideration to be paid to the defendants, the plaintiff was to receive weekly compensation as herein set forth."

Throughout these various pleadings, numerous material facts alleged under oath have been withdrawn from consideration, entire allegations have been omitted, and variations and

changes in essential allegations resulting in contradictions and ambiguity have been effected; all without any explanation or justification. ■ It is well settled that facts once alleged under oath cannot be withdrawn from consideration by merely filing an amended pleading eliminating them without explanation. (*Tognazzi* v. *Wilhelm*, 6 Cal.2d 123 [56 P.2d 1227].) The court, in *Pike* v. *Archibald*, 118 Cal.App.2d 114, commented, at page 118 [257 P.2d 480] : "As stated in respondent's brief, 'appellant should not be allowed to breathe life into a complaint by omitting facts, previously alleged in a verified pleading, which made it fatally defective.' " Similar language is found in *Lee* v. *Hensley*, 103 Cal.App.2d 697 [230 P.2d 159] ; *Wennerholm* v. *Stanford University School of Medicine*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358] ; *Williamson* v. *Joyce*, 137 Cal. 151 [69 P. 980] ; *Neet* v. *Holmes*, 25 Cal.2d 447 [145 P.2d 854] ; *Neal* v. *Bank of America*, 93 Cal.App.2d 678 [209 P.2d 825].

In permitting a third amendment, the court required that the complaint contain a substantial amendment. The result was the addition of that portion beginning "In other words," which was only a reiteration and repetition of the facts set out in the allegations in the second amended complaint previously questioned. No attempt was made in the third amended complaint to state new facts or to explain any variations. It was no more clear and free from defects, ambiguities and uncertainties than the prior complaints to which demurrers had been sustained, and no substantial amendment having been effected by the plaintiff, the court granted the motion to strike.

■ A consideration of the second and third amended complaints in the light of the statute of frauds, the statute of limitations and authorities relating to rules of pleading applicable to declaratory relief and accounting actions, leads us to the conclusion that plaintiff has failed to state a cause of action. At the outset, the alleged oral agreement by its terms was not to be performed within a year from the making thereof and is invalid and barred by the statute of frauds. (Civ. Code, § 1624, subd. 1; Code Civ. Proc., § 1973, subd. 1.)

■ The Supreme Court, in the case of *Swift* v. *Swift*, 46 Cal. 266, at page 268, early laid down the rule that a contract is invalid under the statute of frauds "When it is evident from the subject matter of the contract that the parties had in contemplation a longer period than one year as the time for its performance." (*Long* v. *Cramer Meat & Packing Com-*

*pany,* 155 Cal. 402 [101 P. 297] ; *Edgar Bros. Co.* v. *Schmeiser Mfg. Co.,* 33 Cal.App. 667 [166 P. 366].)

In the case at bar the oral agreement made in May, 1954, was for services in connection with a television series "to be produced" and no definite time for performance was alleged. Plaintiff, however, alleged that since May, 1954, defendants have been and are now producing the series in question. Since it is clear from the pleadings that payment was to continue so long as the program was broadcast throughout the world, the parties must have contemplated that the continued performance of the contract was to last more than one year from the date of making, as indeed it did. Appellants rely upon part performance to take the oral agreement out of the statute of frauds. According to the allegations in the original and first amended complaints, if plaintiff partly performed it was after defendants repudiated the contract in May, 1954, immediately after the agreement was entered into.

Although entitled, "Complaint for Declaratory Judgment and for an Accounting," the action is really one to recover an amount due for breach of the terms of an oral agreement. The nature of the right sued upon and not the form of the action, nor the relief demanded, determines the applicability of the statute of limitations. (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062].) The court, in *Bendien* v. *Solov,* 89 Cal.App.2d 904, discussed a similar situation, at page 907 [202 P.2d 372] : "There is no merit in plaintiffs' contention that the two-year statute of limitations is inapplicable to the present case because their suit was for an accounting. Entitling the action 'Complaint for an Accounting' does not change the character of the action. The character of the action is to be determined not from the relief demanded but from the allegations of the complaint." We hold under the authority of *Pike* v. *Archibald,* 118 Cal.App.2d 114 [257 P.2d 480] ; *Slavin* v. *City of Glendale,* 97 Cal.App.2d 407 [217 P.2d 984], and other cases hereinbefore cited, that having failed to explain in his second and third amended complaints the reason for advancing the date of defendants' repudiation, or breach, of the oral agreement from May, 1954, as alleged in his prior verified original complaint and first amended complaint, to October, 1955, he is bound by his prior allegations. According to them, his cause of action accrued in May, 1954, two years and eight months before the original complaint was filed.

Clearly, plaintiff's cause of action was barred by section 339, subdivision 1, of the Code of Civil Procedure.

Appellant seeks refuge in the four-year statute of limitations applicable to actions for accounting and for declaratory relief. No real cause of action for accounting appears in any of the pleadings. Plaintiff alleged that under the oral agreement, defendants were to pay him a fixed salary of $50 per week, commencing June 1, 1954, to continue as long as the series is exhibited anywhere in the world. Plaintiff prayed for an accounting for all monies to which he is entitled under the agreement; for a judgment in the sum of $7,900 for compensation due under the contract from June 1, 1954, to the date the complaint was filed; and for a further judgment in the sum of $50 per week thereafter for as long as defendants receive compensation for the showing of the series.

Appellant relies heavily on the cases of *Brea* v. *McGlashan*, 3 Cal.App.2d 454 [39 P.2d 877], and *Kritzer* v. *Lancaster*, 96 Cal.App.2d 1 [214 P.2d 407]. However, the facts in these cases differ materially from those at bar. In *Brea* v. *McGlashan, supra,* the pleader alleged that her compensation was to be in the form of a percentage of sums received upon contracts for radio advertising she procured. In praying for an accounting, she alleged that she did not know what monies had been received by defendant. Very clearly an accounting would be the only method of arriving at the amount due her. In *Kritzer* v. *Lancaster, supra,* the pleader alleged breach of an agreement to properly invest his money and sued for his loss based upon secret profits made by defendant with plaintiff's money. Plaintiff's loss there could not be ascertained without requiring defendant to make an accounting of money spent and profits made by him. In addition, a fiduciary relation was alleged. In the instant case, plaintiff was to receive a fixed salary of $50 per week for his services. As pleaded, this *amount per week* cannot vary in any way—with the number of people he refers to defendants, the amount of material used, the number of times it is shown, the length of time the series runs, or anything else. Plaintiff himself concedes this in fixing a sum definite ($7,900), and praying for judgment in that amount. We fail to see for what reason plaintiff needs an accounting—certainly not to ascertain the amount due, which is a simple matter of mathematics and which he himself alleges in a sum certain. There is no occasion for an accounting where plaintiff seeks to recover what he alleges in

his complaint to be a sum certain to his knowledge. (*Kinley* v. *Thelen,* 158 Cal. 175 [110 P. 513].)

The question as to how long plaintiff is to receive the $50 per week in the future does not in any way affect the amount plaintiff alleges is now due under the contract. Moreover, we fail to see how the court will be able to determine in advance how long a particular television series will run. The future of any television show, no matter how popular at the moment, is an unknown quantity in any calculation as attested to by many of our prominent ex-television personalities.

█ As to declaratory relief, we think that no good cause of action therefor remains. █ Until some conventional right of action has accrued, the statute of limitations does not operate independently to cut off the right to bring one for declaratory relief, and after a ''coercive'' right of action has accrued the alternative right to bring an action for the declaratory remedy continues concurrently with the ''coercive'' right of action. *But* after the ''coercive'' remedy is barred by the statute of limitations, a declaratory relief action may not be utilized to circumvent the purpose of the statute. (*Martin* v. *Henderson,* 40 Cal.2d 583 [255 P.2d 416] ; *Toomey* v. *Toomey,* 13 Cal.2d 317 [89 P.2d 634].) █ The court made this clear in the case of *Maguire* v. *Hibernia S. & L. Soc., supra,* at page 734 : ''We are of the opinion that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. █ Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred.'' █ The action for ''coercive'' relief in the instant case accrued in May of 1954 and is barred by the two-year statute of limitations. Hence, we believe that the cause of action for declaratory relief is likewise barred. It is apparent also that without an available remedy to enforce the obligation sued upon, there would be no real reason to have the rights of the parties thereon declared. In line with the general policy of the law to keep our courts free from needless litigation, the action in any event should be stricken from the files.

█ In an attempt to state a good cause of action, plaintiff has drafted four different complaints to which either demurrers were sustained or motions to strike granted. In examining all of the pleadings, we find numerous inconsist-

encies, contradictions, ambiguities, conflicts and uncertainties which plaintiff has never explained or clarified. The second and third amended complaints utterly failed to, and indeed they could not under the sworn facts, remedy the defects in the previous pleadings. No substantial amendments were made even though plaintiff was given ample opportunity by the trial court to clarify ambiguities, amend insufficiencies, eliminate surplusages and explain mistaken statements. Plaintiff simply changed his story with regard to the terms and conditions of the oral agreement and the time of repudiation. We can only conclude that the various changes made by plaintiff in his second and third amended complaints were the result of efforts to conform to a theory of recovery rather than to the facts as they really exist, and that an obvious attempt was made to circumvent the operation of the statute of frauds and the statute of limitations. The court has the right to strike pleadings of this kind from the files. In *Neal* v. *Bank of America, supra,* pages 682, 683, the court, in affirming a judgment of dismissal, stated: ''the courts have inherent power, by summary means, to prevent frustration, abuse, or disregard of their processes. . . . In *Santa Barbara County* v. *Janssens,* 44 Cal.App. 318 [186 P. 372], it was held that an order striking an amended cross-complaint from the files was within the jurisdiction of the trial court, and presumably correct in the absence of error disclosed by the record. The fundamental principle running through the cases is that a court is not required to tolerate a purported amended complaint which fails to amend the previous pleading, is not filed in good faith, is filed in disregard of established procedural requirements, or is otherwise violative of orderly judicial administration. . . . It cannot be doubted that the court had jurisdiction to strike plaintiff's amended complaint on the ground that it was frivolous and a sham and the order .clearly was not an abuse of discretion.''

It was unquestionably proper for the trial court herein to sustain the demurrer to the second amended complaint with leave to amend. There is manifest in this record no abuse of the trial judge's discretion in granting the motion to strike the third amended complaint and the judgment of dismissal.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.