Filed 1/4/23  San Jose Nihonmachi v. Japantown Development CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAN JOSE NIHONMACHI, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JAPANTOWN DEVELOPMENT, L.P., et al.,<br><br>    Defendants and Respondents, | B323095<br><br>(Santa Clara County Super. Ct. No. 19CV353484) |

Appeal from judgment of the Superior Court of Santa Clara County, Christopher G. Rudy, Judge.  Affirmed.

Gates Eisenhart Dawson, James L. Dawson, Marc A. Eisenhart, Steven D. McLellan and Claire A. Melehani for Plaintiff and Appellant San Jose Nihonmachi, LLC.

The Keegan Law Firm, William J. Keegan; Law Office of Gerald Clausen and Gerald Clausen for Defendant and Respondent Japantown Development, L.P.

Brothers Smith and Mark V. Isola for Defendant and Respondent Nihonmachi-Miraido Partners, L.P.

Appellant San Jose Nihonmachi, LLC (SJN) appeals from the May 25, 2021 judgment entered in favor of respondents Nihonmachi-Miraido Partners, L.P. (NMP) and Japantown Development, L.P. (Japantown Development) following issuance of the court's April 16, 2021 order granting respondents' motions for summary judgment and the court's August 4, 2021 order denying SJN's motion for new trial. Specifically, SJN contends that the trial court erred in concluding on summary judgment that SJN was not entitled to an accounting from either respondent. Because SJN cannot establish the requisite "balance due" element of its accounting claims, we affirm the trial court's judgment.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

### A. *Overview*

This appeal arises out of the last of three cases filed by SJN against NMP and Japantown Development in connection with the parties' development of Miraido Village, a 109-unit multifamily residential rental facility in the "Japantown" area of San Jose, California (the project). The 35-year history of business dealings and litigation between the parties is set forth in detail in our opinion in *San Jose Nihonmachi, LLC v. Miraido Corporation et al.* (Jan. 4, 2023, B323093) [nonpub. opn.]. We therefore summarize here only the facts and procedural history relevant to our resolution of this related appeal.

In 1987, a group of businesspeople, including Yoshihiro Uchida (Uchida), formed an entity for developing a Japanese cultural center and low-income housing project, with a combination of investor funds and a $4.2 million loan from Uchida. For that purpose, the entity acquired real property

2

located at the corner of 6th Street and Jackson Street in San Jose, California (the property). When the entity was unable to stay current on the loan payments to Uchida, it conveyed the property to Miraido, Uchida's wholly owned corporation, in exchange for forgiveness of the $4.2 million loan.

In June 1993, Uchida and a few other individuals created a new entity, Nihonmachi-Miraido Partners, L.P. (NMP) to make a renewed effort at developing the property. Pursuant to the June 7, 1993 limited partnership agreement governing NMP (the NMP agreement), Miraido served as NMP's general partner, and SJN's predecessor-in-interest, San Jose Nihonmachi Corporation, served as its limited partner.[1]

In June 1995, development of the project again stalled, and NMP sold the property to the San Jose Redevelopment Agency (RDA). Then, on May 1, 1997, NMP entered into a limited partnership agreement with A.F. Evans, forming a new entity—Japantown Development—to take over development of the property (the Japantown agreement). The Japantown agreement designated A.F. Evans as Japantown Development's general partner and NMP as its sole limited partner. Soon after its formation, in 1997, Japantown Development obtained a ground lease from the RDA, and construction of Miraido Village began.

In the midst of construction, in August 1998, SJN filed a lawsuit against Miraido, Uchida, A.F. Evans, and Japantown

---

[1] The parties agree that SJN acquired all the rights of San Jose Nihonmachi Corporation in 2003, and the distinction between the two entities is not pertinent to the issues on appeal. In the interest of simplicity, we therefore refer only to SJN in the remainder of the opinion.

3

Development (the 1998 action) seeking, inter alia, invalidation of the June 1995 sale of the property to the RDA and recalculation of the NMP capital accounts for Miraido and SJN. SJN contends that it "filed the 1998 lawsuit for a number of reasons, including an attempt to reduce SJN's economic interest in NMP, and a refusal by NMP to provide any financial information to SJN." After nearly five years of litigation, the parties entered into a settlement agreement in February 2003 (the 2003 settlement). The parties executed amendments to the NMP agreement and Japantown agreement, in accordance with the 2003 settlement's terms.

As relevant to this appeal, the second amendment to the NMP agreement included the memorialization of SJN's right to certain "special allocations," including as set forth in section 3.1(g) of the amendment: "(g) Special allocation of profits on sale of substantially all property. After the allocation of profits made in Section 3.1(b) and (h) (in the priority established in the Treasury Regulations), 3.1(e)(ii), 3.1(a)(i), 3.1(c) and 3.1(d), and prior to any other allocation of profits from the sale of substantially all the partnership property or from the sale of substantially all of the property held by Japantown [Development], profits shall be allocated to the limited partner to the extent of two hundred thousand dollars ($200,000)." (Capitalization omitted.) SJN maintains that, following the settlement, "NMP and [Japantown Development] continued to refuse to give [it] basic financial information such as ledgers, subledgers[,] and source documents."

Construction had continued during the 1998 action and the project was completed by the end of 1999. The property, however, had significant, on-going environmental clean-up

4

issues resulting from a prior owner's industrial use of the land. Although the problem did not prevent leasing the units at Miraido Village, respondents contend that the problem consumed funds generated from the lease payments. Nonetheless, Japantown Development was able to make a number of interim partnership distributions to NMP between 2015 and 2020. Each time Japantown Development made a distribution to NMP, NMP would, in turn, make a distribution to SJN, in accordance with the capital account interests set forth in the 2003 settlement—namely, 23.2 percent to SJN and 76.8 percent to Miraido. Respondents contend that SJN never communicated to them any objection to the amount of the distributions.

In September 2017, Japantown Development sold the project to a third-party buyer for approximately $34.5 million. The net proceeds from the sale exceeded $21 million. NMP received $13.2 million in October 2017 as the initial distribution of the proceeds from the sale of the property. Of that $13.2 million, NMP held $1 million in reserves for future expenses and distributed $2,830,400 to SJN (i.e., 23.2 percent of $12.2 million) and $9,369,600 to Miraido (76.8 percent of $12.2 million). The parties agree that the 2017 sale of the project triggered the dissolution of both NMP and Japantown Development. The parties also agree that both partnerships remain in the process of winding up.

On the day the sale closed, SJN again filed suit against Miraido, Uchida, A.F. Evans, and Japantown Development in connection with the project (the 2017 action). SJN demanded an accounting and also asserted claims for breach of fiduciary duty, declaratory relief, and conversion. Following nearly two years of

5

litigation, in May 2019, SJN voluntarily dismissed all its claims on the eve of trial.

Three months later, on August 21, 2019, SJN filed suit in connection with the project yet again (the 2019 action)—the case giving rise to this appeal. The operative first amended complaint (FAC) in the instant action names Uchida, AFE Urban, NMP, and Japantown Development as defendants, and asserts four claims: (1) long accounting (by NMP against Japantown Development)[2]; (2) dissolution and winding up (by NMP against Japantown Development); (3) long accounting (by SJN against NMP); and (4) dissolution and winding up (by SJN against NMP). In contrast to the complaint filed in the 2017 action, however, the seven-page FAC before us does not allege any wrongdoing or misconduct by defendants in support of its request for an accounting.

In July 2020, SJN dismissed the second and fourth claims from the FAC without prejudice, leaving only the long accounting claims remaining. Then, in October 2020, NMP and Japantown Development each filed a motion for summary judgment on SJN's claims for long accounting, arguing that (1) an accounting claim cannot be pursued independently of other causes of action, and (2) because no balance was then due, it could not satisfy one of the requisite elements of an accounting claim. NMP further

_____

[2] SJN contends that a "long accounting" requires the court to examine all debits and credits of the NMP and Japantown Development partnerships dating back to the partnerships' inception, and to determine any amount owing to SJN. Because SJN is a limited partner in NMP—and NMP, in turn, is a limited partner in Japantown Development—SJN brings its long accounting claim against Japantown Development derivatively.

6

argued that SJN could not satisfy the "balance due" requisite of such a claim because SJN had not produced any evidence that any amount due could only be ascertained by an accounting.[3]

SJN opposed both motions and lodged related evidentiary objections. NMP and Japantown Development each filed reply briefs, and NMP lodged its own evidentiary objections. The parties also filed related requests for judicial notice.

## B. *Trial Court's Order Granting Summary Judgment*

After a hearing on the two summary judgment motions, on April 16, 2021, the court issued a 17-page written order granting the motions. The court granted NMP's requests for judicial notice, but did not rule on the other parties' requests for judicial notice or on any party's evidentiary objections. On appeal, neither party challenges the court's evidentiary rulings. The court rejected respondents' argument that an accounting claim may not be pursued independently of other causes of action. The court, however, agreed with NMP that (1) it did not then owe any amount to SJN, and (2) to the extent any amounts become due, they will be readily ascertainable without an accounting.

---

[3] NMP sought summary adjudication on an additional statute of limitations-related issue that we need not address, given our conclusion, *ante*, that SJN cannot establish the requisite "balance due" for its accounting claims. In addition, NMP's motion sought summary judgment in favor of Uchida. The trial court ruled that this portion of the motion was moot, in light of SJN's prior dismissal of Uchida (and AFE Urban) from the action.

7

Similarly, with respect to Japantown Development, the court concluded "that there is presently no basis for an accounting."

The court entered judgment in favor of respondents on May 25, 2021.  The court denied SJN's subsequent motion for a new trial, and SJN timely appealed.

## DISCUSSION

### A.    *Standard of Review*

"We review a trial court's granting summary judgment de novo, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.'  [Citation.]  We 'liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning the evidence in favor of that party.'  [Citation.]"  (*Peralta v. The Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1034.)

### B.    *The Trial Court Properly Granted Summary Judgment in Favor of Respondents*

#### 1.    *Law Governing Accounting Claims*

"An accounting is an extraordinary remedy usually available only when legal remedies are inadequate."  (*Border State Bank, N.A. v. AgCountry Farm Credit Services* (8th Cir. 2008) 535 F.3d 779, 784.)  A plaintiff therefore bears the burden of establishing need for an accounting.  (See, e.g., *Baxter v. Krieger* (1958) 157 Cal.App.2d 730, 732 ["Before an accounting is in order, the right to an accounting must be established.  It may be dispensed with where under the evidence the need or right to one is not shown."].)  Courts have recognized such a need in cases

8

involving alleged fraud or misconduct by the party from whom the accounting is sought (see, e.g., *Roberts v. Eldred* (1887) 73 Cal. 394, 395 (*Roberts*)), or where a party has a contractual right to an accounting. (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 35.) Most recently, our Supreme Court has confirmed that a plaintiff may establish the need for an accounting by pleading and proving: "(1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting.'" (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869 (*Sass*), quoting *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 (*Teselle*).)[4]

2.     *SJN Cannot Establish Either that a Balance Is Due or that an Accounting Is Necessary To Determine the Amount Due*

The trial court properly granted summary judgment in favor of respondents because the undisputed evidence demonstrates that no balance was then due to SJN from NMP or Japantown Development that can be ascertained only by an accounting.

SJN does not contend that any alleged misconduct by respondents or any contractual right establishes the need for an accounting in this case. Instead, SJN alleges in the FAC that an accounting is required here because "[u]pon information

---

[4] The *Sass* court refers to these requirements as "two elements." (*Sass*, *supra*, 10 Cal.5th at p. 869.) Broken down, however, the requirements are actually three: (1) a relationship that requires an accounting; (2) a balance due; and (3) the balance due can only be ascertained by an accounting.

9

and belief, a balance is due" to it.  SJN identifies only two forms of payment that might constitute such a "balance due":  (1) a $200,000 special allocation of profits from the sale of the property pursuant to section 3.1(g) of the second amendment to the NMP agreement, and (2) a final partnership distribution, by virtue of SJN's status as a limited partner in NMP, which, in turn, is a limited partner in Japantown Development.[5]

As to SJN's claimed entitlement to the $200,000 special allocation, even if the allocation constitutes a balance owed to SJN, no accounting is necessary to ascertain the amount due. (See *St. James Church of Christ Holiness v. Superior Court* (1955) 135 Cal.App.2d 352, 359 ["The complaint does not state a case for an accounting.  It clearly appears that none is necessary . . . .  All the facts necessary for the calculation of the amount sought are alleged . . . and the amount is certain."].)

As to SJN's possible entitlement to a final partnership distribution, it cannot satisfy the "balance due" requirement. Corporations Code section 15905.04[6] provides expressly that a limited partner "does not have a right to any distribution before the dissolution and winding up of the limited partnership unless

---

[5] Although SJN asserts that "[b]oth NMP and [Japantown Development] admit that they are withholding monies which, in some amount, are owed to SJN and NMP," it fails to refute respondents' contention that a balance would only be due a limited partner, like SJN, in the form of an interim or final partnership distribution.  On appeal, SJN does not pursue certain arguments it originally made before the trial court concerning other allegedly unpaid interim distributions.

[6] All unspecified statutory references are to the Corporations Code.

10

the limited partnership decides to make an interim distribution."
(§ 15905.04.)  The Japantown agreement similarly provides
that no final distribution can be made to the partners until
the partnership first liquidates its assets and uses the proceeds
to satisfy any partnership debts to creditors—i.e., winds up.
And NMP cannot wind up and make its final partnership
distribution until it receives the final distribution from
Japantown Development.  SJN does not dispute that the
partnerships still are in the process of winding up.  Therefore,
no final partnership distribution to SJN is due at this time.

Accordingly, the undisputed evidence establishes that,
at the time the court ruled on the summary judgment motions,
(1) the only balance allegedly due from NMP to SJN could be
ascertained without an accounting, and (2) no balance
whatsoever was due from Japantown Development.  These
facts are fatal to SJN's accounting claims.[7]

To be clear, we do not hold that a plaintiff never can
seek an accounting prior to a partnership's winding up.  It is
conceivable, for example, that where a partner allegedly has
engaged in fraud or misconduct, an accounting prior to winding

---

[7] Given this conclusion, we necessarily reject SJN's
argument that respondents shirked their evidentiary burden on
summary judgment by failing to "produce *all* evidence of debits
and credits [dating back to the partnerships' inception], i.e., to
account."  The argument is circular, and the decision in *Civic
Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1,
on which SJN relies, applies an outdated summary judgment
standard that required "[t]he proponent of summary
judgment . . . to negate all possible merit inherent in the cause
of action it seeks to terminate."  (*Id.* at p. 15.)

11

up might be appropriate. Various cases SJN cites—inapposite to the instant case, which does not involve any allegations of fraud or misconduct—might support such a proposition. (See *Roberts*, *supra*, 73 Cal. at p. 395; *Davis v. California Motors* (1946) 73 Cal.App.2d 241, 243; *Swanton v. Jacks* (1916) 30 Cal.App. 66, 68.) We need not resolve this issue, however, because here no such allegations are contained in the operative complaint.

SJN advances three additional arguments on this point, none of which we agree with: (1) the trial court "disregard[ed] SJN's long accounting claims" as pleaded and "summarily adjudicat[ed] an entirely different claim of merely seeking post-dissolution distribution" (capitalization omitted); (2) SJN does not have to establish that " 'some balance is due . . . that can only be ascertained by an accounting' " (*Sass*, *supra*, 10 Cal.5th at p. 869), because NMP and Japantown Development's dissolution alone entitles SJN to an accounting; and (3) even if SJN does need to establish that some balance is due, it need not demonstrate that any balance "presently" is due or that the balance is uncertain and can be ascertained only via an accounting.

As an initial matter, we disagree that the trial court effectively "rewr[ote] SJN's complaint" by purportedly ignoring SJN's request for a long accounting of all partnership activities, including the alleged "decades of complex transactions in developing and managing Miraido Village," and focusing instead on NMP's and Japantown Development's "post-dissolution expenses and distributions." Indeed, SJN itself concedes that "the trial court repeatedly acknowledged in its order that SJN sued for a long accounting." The court correctly focused its analysis on whether any final partnership distribution then

12

was owed to SJN because, as discussed, *ante*, a final partnership distribution is the only possible unascertained balance that may be due to SJN.[8]

We turn next to SJN's contention that, notwithstanding its allegations in the FAC that an accounting is required here because "a balance is due," SJN is excused from demonstrating the existence of such a balance because NMP's and Japantown Development's dissolution alone establishes the need for an accounting. None of SJN's authorities supports this proposition. *Ferem v. Olsen & Mahony* (1917) 176 Cal. 652, relied on by SJN, does not involve facts analogous to those here—namely, where (1) the partnerships still are in the midst of winding up, and (2) by statute or by contract, the only form of payment to which the limited partner is entitled (here, a final distribution) will not come due until the winding up process is complete. *Avery v. Peirson* (1925) 74 Cal.App. 617 and *Kritzer v. Lancaster* (1950) 96 Cal.App.2d 1 (*Kritzer*), also relied on by SJN, affirmatively support that an accounting plaintiff must establish that some balance is due. (See *Avery, supra,* 74 Cal.App. at p. 620 ["[o]n the dissolution of the partnership, each partner was entitled to

---

[8] For this same reason, we reject SJN's argument on reply that Japantown Development and NMP "misapprehend the 'balance due' element" (boldface and capitalization omitted) as "requir[ing] a right to a final or interim distribution." Respondents do not contend that a partner always must demonstrate that a final or interim distribution is due to satisfy the "balance due" requirement. Japantown Development and NMP focus their arguments on interim and final partnership distributions because SJN identifies no other specific payments to which it may be entitled.

an accounting, *if there was any sum whatever to be accounted for*," italics added]; *Kritzer*, *supra*, 96 Cal.App.2d at p. 7 ["it is rather clear that [the complaint] states a cause of action for an accounting as it appears that a relationship exists which requires an accounting *and that there is something due to appellant from the respondents*," italics added].)

The Uniform Limited Partnership Act (ULPA) provisions that SJN cites also confirm that a partnership's dissolution alone is insufficient to support an accounting claim, as they tether the availability of an accounting to a partnership's winding up. (See § 15907.02, subd. (c) ["[a] transferee is entitled to an account of the limited partnership's transactions only upon the dissolution *and winding up* of the limited partnership," italics added]; § 15907.04 [incorporating section 15907.02 by reference]; § 15910.01, subd. (c) ["[a] right to an accounting upon a dissolution *and winding up* does not revive a claim barred by law," italics added].) Moreover, we find unconvincing SJN's argument that "the limitations period on 'look back' accountings . . . leave[s] no doubt" that a partnership's dissolution, standing alone, establishes the need for an accounting. Although not entirely clear, SJN's argument appears to proceed as follows: (1) an action for a "long accounting" is a "well understood" legal term of art that requires a court to "examin[e] [the] debits and credits span[ning] the entire time of the partnership's 'conduct' "; (2) the statute of limitations for a long accounting claim begins to run only upon the dissolution of the partnership; and (3) the combination of these two facts confirms that a partnership's dissolution alone—even in the absence of any unascertained balance due—establishes the need for an accounting. We note Japantown Development's argument

14

that the 2010 enactment of section 15910.01[9] "means that any ancient claims SJN was hoping to uncover by examining all of the partnership's transactions going back to 1997 would be barred by the statutes of limitations, or by laches, or by both." Nonetheless, we need not and do not resolve the issue.

We therefore conclude that, standing alone, the dissolution of the NMP and Japantown Development partnerships does not entitle SJN to an accounting. We note that, in addition to harmonizing SJN's authorities with *Sass*, our conclusion promotes the principle of judicial economy. As discussed during oral argument, the law affords limited partners means other than a judicially supervised accounting to obtain access to a partnership's books and records. (See, e.g., § 16403, subd. (b) ["[a] partnership shall provide partners and their agents and attorneys access to its books and records"].) It therefore makes sense that a plaintiff must make a showing of need before shifting the cost and burden of an accounting to the court or a court-appointed referee. Because, as set forth, *ante*, SJN cannot make such a showing, the trial court properly granted summary judgment.

SJN's final arguments concerning the "balance due" requirement are also unconvincing. Its insistence that it need not demonstrate that a balance "presently" is due is belied by the language of *Sass* and other controlling precedent that discusses the "balance due" requirement in the present tense. (See *Sass, supra,* 10 Cal.5th at p. 869 [accounting claim requires " 'that

---

[9] Subdivision (c) of section 15910.01 provides, in relevant part, "[a] right to an accounting upon a dissolution and winding up does not revive a claim barred by law."

15

some *balance is due* the plaintiff,' " italics added]; *Teselle*, *supra*, 173 Cal.App.4th at p. 179 ["[a] cause of action for an accounting requires a showing that . . . some *balance is due* the plaintiff," italics added]; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1136–1137 [an accounting "is proper where *there is an unliquidated and unascertained amount* owing that cannot be determined without an examination of the debits and credits on the books to determine what is due and owing," italics added]; *Kritzer*, *supra*, 96 Cal.App.2d at p. 7 ["there *is something due* to appellant from the respondents," italics added].)

Also unavailing is SJN's reliance on *Roberts* and *Walsh v. McKeen* (1888) 75 Cal. 519 (*Walsh*). SJN urges that these cases reflect courts' willingness to "consider payments or obligations that occur after filing the lawsuit in finalizing the accounting," and that this, in turn, suggests that no balance need be due "presently." But it does not follow from a court's willingness to roll newly occurring obligations into an existing accounting action that a plaintiff may initiate an accounting in the absence of at least *some* balance due. And SJN confuses proof of its present entitlement to any balance due with proof of the dollar amount due in arguing that, because "the purpose of the accounting is, in part, to discover what, if any, sums are owed" (*Teselle*, *supra*, 173 Cal.App.4th at p. 180), it need not establish that any balance is due presently.

Similarly unpersuasive is SJN's parallel contention that "in the context of an action for accounting precipitated by a partnership dissolution, the cases establish that the 'sum certain or easily calculable' rule simply does not apply." *Teselle* and *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872,

16

cited by SJN, confirm that a plaintiff must demonstrate that the balance due cannot be ascertained absent an accounting. (*Teselle*, *supra*, 173 Cal.App.4th at p. 179 ["[a]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation"]; *Jolley*, *supra*, 213 Cal.App.4th at p. 910 [" '[a] cause of action for an accounting requires a showing that . . . some balance is due the plaintiff that can only be ascertained by an accounting' "].)  And, read in context, the language SJN cites from *Wolf* and *Jones v. Wagner* (2001) 90 Cal.App.4th 466, buttresses only the uncontroversial principle that a fiduciary relationship may support, but is not required for, an accounting action.

Accordingly, we conclude that SJN cannot establish the claims for accounting.[10]  We therefore affirm the judgment in favor of respondents.

---

[10] Our conclusion renders consideration of the parties' remaining arguments unnecessary, including SJN's argument that the trial court violated its due process rights by granting summary judgment to Japantown Development on a ground not raised.  Our affirmance relies solely on issues the parties fully briefed before the trial court and on appeal.

17

## DISPOSITION

The court's May 25, 2021 judgment in favor of NMP and Japantown Development is affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.

18