Filed 1/21/14  Renswick v. Tapanes CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| GERI RENSWICK, | B248055 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC487698) |
| v. | |
| RICARDO TAPANES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Reversed with directions.

Haney Law Group, Haney & Young, Steven H. Haney, Sarah J. Peterson and Ryan C.C. Duckett for Plaintiff and Appellant.

Marcos F. Hernandez and Alexander Molina for Defendants and Respondents.

_____

## INTRODUCTION

Geri Renswick, an elementary school teacher, filed this action against her employer, the Los Angeles Unified School District, her school, Humphreys Avenue Elementary School, and her principal, Ricardo Tapanes (collectively, the District). The District filed a demurrer to three of the five causes of action in Renswick's second amended complaint, and the trial court sustained the demurrer without leave to amend. The trial court then dismissed the entire action, even though two causes of action remained, and entered a judgment of dismissal against Renswick. We reverse the judgment because the trial court's order sustaining the demurrer to three of the five causes of action did not resolve the entire action.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Renswick's operative second amended complaint alleged that she was employed by the District as an elementary school teacher for over 22 years and was over the age of 40. She suffered "from a physical disability and/or condition (incontinence)," which "impacted a major life activity-specifically her ability to pass urine or feces under her own control." Despite a surgery in approximately 2008, Renswick "still suffered from incontinence, and her colon continued to function improperly resulting in sporadic, and/or the uncontrolled passage of bowel and/or urinary movements," so that "Renswick was subject to frequent and irregular bathroom breaks during the school year . . . ." As a result, Renswick needed reasonable accommodations on school days during bad weather because on such days teachers had "to maintain recess within their own individual classrooms" and could not leave the students unsupervised.

---

[1]   "On appeal from the sustaining of a demurrer, we accept as true the well-pleaded facts in the operative complaint, [Renswick's] second amended complaint." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1189, fn. 1.)

At some point during Renswick's tenure at Humphreys Avenue Elementary School, Tapanes became the principal. Renswick asked Tapanes for an accommodation that, on "inclement weather days," would "allow another staff member to supervise her classroom for a short period of time to allow [her] additional time to use the restroom" during indoor recess periods. "Tapanes denied this request, and forced Renswick to hold in her own urine and/or bowels, or run the risk of having her classroom unsupervised and be subject to unwarranted discipline if she left her classroom to use the restroom." The District did not engage in an interactive process "to determine the reasonableness of this accommodation request."

Because of Renswick's age and disability, Tapanes arranged to have "his assistant follow [Renswick] around school to subject her to heightened scrutiny when no other teachers without such characteristics were forced to endure" such scrutiny. Tapanes also made derogatory remarks about Renswick's health and age, and spoke to her "about the differences between retirement and termination . . . as a means to threaten her and force her to retire," even though Renswick had not requested such information. Tapanes embarrassed Renswick by "publicly criticizing" her about her teaching style, "subjected her to several subsequent disciplinary conferences" "as a form of public embarrassment and ridicule," and denied her breaks during her teaching day. Tapanes also made "knowingly false comments about her performance, experience, and skills."

When Renswick complained, Tapanes "retaliated against [her] for speaking her voice and expressing her opinion about being targeted because of her age." Tapanes also retaliated against Renswick for her union representation at a disciplinary hearing of another female teacher who was also alleging discrimination under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). Tapanes tried "to coerce and discourage [Renswick] from representing other teachers at disciplinary hearings concerning their own allegations of FEHA violations," and used discipline to discourage Renswick "from filing a grievance or having a union representative present at her several disciplinary hearing[s]." In 2012, after Renswick filed two complaints with the Department of Fair Employment and Housing (DFEH), Tapanes "engaged in further

3

retaliatory conduct by denying [Renswick] family leave to be with her sister who was suffering from cancer. Even though there were three substitute teachers on standby, Tapanes denied Renswick's request to have a substitute teacher cover for her so she could be with her ill sister."

Renswick's second amended complaint asserted causes of action for (1) disability and age discrimination in violation of FEHA (Gov. Code, § 12940, subd. (a)), (2) failure to provide reasonable accommodation for a physical disability in violation of FEHA (*id*., § 12940, subd. (m)), (3) failure to engage in the interactive process in violation of FEHA (*id*., § 12940, subd. (n)), (4) retaliation in violation of FEHA (*id*., § 12940, subd. (h)), and (5) intentional infliction of emotional distress.

The District demurred to the first, fourth, and fifth causes of action of Renswick's second amended complaint. The District argued that the first cause of action was uncertain because it included both disability discrimination and age discrimination, which could prevent the District from filing a motion for summary adjudication on the first cause of action. The District also argued that Renswick did not allege that it had engaged in any wrongdoing because of her protected status or that she had suffered an adverse employment action. The District argued that the fourth cause of action was "devoid of facts" because Renswick did not allege retaliation on the basis of her protected status, and that "FEHA only prohibits retaliation for engaging in acts protected by FEHA," and union representation is not one of those acts. Finally, the District argued that the fifth cause of action for intentional infliction of emotional distress did not allege extreme or outrageous behavior and was preempted by Workers' Compensation. The District did not demur to, or make any argument regarding, Renswick's second cause of action for failure to provide reasonable accommodation or the third cause of action for failure to engage in the interactive process.

At the hearing on the District's demurrer, the trial court stated, "[t]here's not a single fact pled here that shows anything, not real facts, not evidentiary facts. And you don't have to plead everything with evidentiary facts, but certain types of allegations you must plead with more particularity." The trial court stated, "This is a fact-pleading state.

4

We need some facts. . . . There's just nothing here except conclusory statements that she has a stomach condition and she's been discriminated against in various ways. That's it." The trial court ruled: "Defendant's Demurrer is sustained without leave to amend, the complaint consisting of nothing but conclusory general statements with no factual basis whatsoever shown for the conclusions stated. As to defendant Humphreys Avenue Elementary School, the entire action is stricken and dismissed with prejudice. In light of the Demurrer ruling, the entire complaint is dismissed with prejudice."[2] Renswick filed a timely notice of appeal.

## DISCUSSION

### A.   *Standard of Review*

When reviewing a judgment dismissing an action after an order sustaining a demurrer without leave to amend, we review the complaint de novo "to determine whether the complaint alleges facts sufficient to state a cause of action on any legal theory." (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 130-131.) "We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1250.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; accord, *Arce v. Childrens Hospital Los*

---

[2]   The District had filed a motion to strike five portions of the second amended complaint that identified Humphreys Avenue Elementary School as a defendant on the ground that under Education Code section 35162 an individual school is not a proper defendant. Renswick did not oppose the motion.

*Angeles* (2012) 211 Cal.App.4th 1455, 1471.) "The issue of leave to amend is always open on appeal, even if not raised by the plaintiff. [Citation.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

B.      *The Trial Court Erred by Dismissing the Action Because the District Did Not Demur to the Second Cause of Action for Failure To Provide Reasonable Accommodation or the Third Cause of Action for Failure To Engage in the Interactive Process*

The trial court dismissed the entire action even though after the court had sustained the District's demurrer to three causes of action, two causes of action remained. This was error, undoubtedly inadvertent. (See *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1254 [trial court cannot issue a judgment of dismissal where the court has not disposed of all causes of action]; cf. *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307 ["judgment that disposes of fewer than all the causes of action framed by the complaint is not final in the fundamental sense as to any parties between whom another cause of action remains pending"].)

The District contends that the trial court "heard its own motion to dismiss under Sections 436 and 438 of the Code of Civil Procedure."[3] The record does not support the District's contention. There is nothing in the record indicating that the trial court dismissed Renswick's second amended complaint pursuant to either Code of Civil

---

[3]      Code of Civil Procedure section 436 provides: "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." Code of Civil Procedure section 438, subdivision (b)(2), provides that a court "may upon its own motion grant a motion for judgment on the pleadings," and that if, after the court grants such a motion with leave to amend, and an amended complaint or answer is filed after the time for doing so has expired, then the court may strike the amended complaint or answer. (*Id*., subds. (b)(2), (h)(4)(A) & (B).)

6

Procedure section 436 or section 438. The trial court's order does not state that it was striking or dismissing either the second and third causes of action, or the entire second amended complaint, pursuant to either of these statutes. To the contrary, the trial court's minute order states that the court dismissed the complaint "[i]n light of the Demurrer ruling."

Nor does the record show that the trial court gave any notice that it was considering striking or dismissing the second amended complaint on its own motion pursuant to Code of Civil Procedure section 436 or section 438. In fact, the record is to the contrary. On November 9, 2012 the trial court continued the hearing on the District's demurrer to Renswick's first amended complaint to February 19, 2013 and gave notice that it also would be conducting a hearing pursuant to Code of Civil Procedure sections 436 and 438 with respect to Renswick's first amended complaint on that date. The trial court stated, however, that "[a]n Amended Complaint can be filed within 30 days. And if not answered, any demurrer, et cetera, can be heard on 2-19-13 at 9:30 a.m., but no [Code of Civil Procedure section] 438, 436 hearing will be on for that date." The trial court also stated at the November 9, 2012 hearing that Renswick would only have to file opposition to a motion under section 436 or 438 if she decided not to file an amended complaint, which she did file on December 10, 2012.

Citing *Tostevin v. Douglas* (1958) 160 Cal.App.2d 321, the District argues that dismissal is appropriate where a plaintiff changes his or her story in multiple complaints to conform with different theories of recovery. The trial court in *Tostevin*, however, did not strike a complaint on its own motion. Rather, it struck the complaint pursuant to a motion to strike filed by the defendant after the plaintiff had failed to comply with the court's directions in a prior order sustaining a demurrer with leave to amend. (*Id*. at p. 324.) Moreover, the plaintiff in *Tostevin* kept making changes to his complaints in "an obvious attempt . . . to circumvent the operation of the statute of frauds and the statute of limitations." (*Id*. at p. 331.) There is no suggestion that Renswick did any such thing in this case. Similarly, in *Neal v. Bank of America* (1949) 93 Cal.App.2d 678, also cited by the District, the trial court struck an amended complaint that consisted "solely of a mere

7

reiteration" of the original complaint and that made no attempt "to state new facts, or to state the facts more fully," not on the court's own motion pursuant to Code of Civil Procedure section 128 but by granting the defendant's motion to strike and to dismiss the action. (*Id.* at pp. 681, 682; see *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2008) 162 Cal.App.4th 1408, 1420, fn. 11 [*Neal* "involve[d] a judicial response to a duly noticed motion"].)

The District also asserts the trial court "has the power to strike . . . frivolous and sham pleadings" pursuant to Code of Civil Procedure section 128. Section 128 gives the court the authority to do many things, such as preserving order, compelling compliance with judgments, orders, and process, and compelling attendance of persons to testify, but it does not say anything about striking frivolous or sham pleadings. The District has not cited to any authority authorizing dismissal of a complaint pursuant to section 128 because the complaint is frivolous or a sham.[4] Nor does the District dispute that in this case there was no notice of any motion to dismiss, or order to show cause regarding dismissal of, the complaint pursuant to Code of Civil Procedure section 128.

---

[4] In *Schimmel v. Levin* (2011) 195 Cal.App.4th 81, a case not cited by the District, the Court of Appeal, citing Code of Civil Procedure section 128, subdivision (a)(5), held that the trial court did not abuse its discretion in striking the defendant's petition to compel arbitration filed by a disqualified lawyer who had confidential information about the plaintiff, but the court gave the defendant 60 days to re-file the petition. (*Id.* at pp. 83, 87-88.) In *Leavitt v. County of Madera* (2004) 123 Cal.App.4th 1502, the court assumed, but did not reach the issue of whether, "superior courts have the discretion under Code of Civil Procedure section 128 to dismiss a CEQA petition in the appropriate circumstances where the petitioner" fails to prepare and complete the administrative record of proceedings "in a timely fashion." (*Id.* at p. 1524; but see *Cunningham v. Superior Court* (1986) 177 Cal.App.3d 336, 356 [Code of Civil Procedure section 128 "empowers the trial court to dismiss when appropriate"].)

C.    *The Trial Court Erred by Sustaining the Demurrer to the First Cause of Action for Age and Disability Discrimination*

To state a claim for disability or age discrimination under FEHA, the plaintiff must allege "that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355; see *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 979.) Renswick argues that she pleaded all of these elements. The District contends that she failed to plead sufficient facts on element (3) adverse employment action and element (4) some other circumstance suggesting discriminatory motive.

"[A]n adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable . . . ." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1052.) "[T]he determination of what type of adverse treatment properly should be considered discrimination in the terms, conditions, or privileges of employment is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee. Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [Government Code] sections 12940[, subdivision ](a) and 12940[, subdivision ](h)." (*Id.* at pp. 1054-1055, fn. omitted.) "[T]he phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against

9

employment discrimination that the FEHA was intended to provide." (*Id.* at p. 1054, fn. omitted.)

At the hearing on the District's demurrer, the trial court told counsel for Renswick, "You have nothing pled, sir. I'm sorry. I don't see it." We, however, see it.

Renswick alleged that the District subjected her to "heightened scrutiny" and classroom inspections that the District did not impose on other teachers, subjected Renswick to unwarranted discipline that other teachers did not receive, refused to allow her to go to the restroom when she needed to, did not give her sufficient notice of disciplinary conferences to allow her to have union representation, and, in retaliation, denied her request for family leave. These allegations satisfy the element of adverse employment action. (See *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1381 ["a series of alleged discriminatory acts must be considered collectively rather than individually in determining whether the overall employment action is adverse [citations] and, in the end, the determination of whether there was an adverse employment action is made on a case-by-case basis, in light of the objective evidence"].) In the "particular factual context of employment" as an elementary school teacher (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 374), denying Renswick the opportunity to use the restroom with sufficient frequency to accommodate her disability, requiring her to remain in the classroom with bladder and bowel discomfort while supervising children, and increasing the risk of urination and defecation in the classroom, materially affected the terms, conditions, and privileges of her employment. (See *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1233 [*Yanowitz* gives a "broad interpretation of the materiality test"], disapproved on another ground in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173-1174; *Turner v. Hershey Chocolate USA* (3d Cir. 2006) 440 F.3d 604, 611, fn. 4 [adverse employment action under the Americans with Disabilities Act includes the failure to make reasonable accommodations to a qualified employee with a physical disability]; *Honey v. County of*

10

*Rockland* (S.D.N.Y. 2002) 200 F.Supp.2d 311, 320 [refusal to accommodate a plaintiff's disability is an adverse employment action under the Americans with Disabilities Act].)

The District also argues that Renswick was "unable to establish . . . any circumstance suggesting a discriminatory motive," and made "no showing . . . that 'some other circumstance suggests discriminatory motive' . . . , as her claim must be based upon evidence . . . ." FEHA, however, does not require the plaintiff to "establish" or "show" anything at the pleading stage. Renswick alleged that the District was aware of her disability and the problem her incontinence caused on inclement weather days, but denied her request for an accommodation of temporarily allowing another staff member to cover her classroom for a brief period of time so she could use the restroom. She alleged that "Tapanes made derogatory remarks [about] her health," subjected her to sudden discipline that other non-disabled teachers did not have to experience, yelled at her, threatened teachers who "ever talked . . . about the discrimination," and denied her request for family leave after she filed DFEH complaints. These allegations suggest "a proscribed motive" and satisfy the fourth element of a disability discrimination claim. (See *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 714.)

The District does not make any argument specifically directed to Renswick's age discrimination claim. "In order to make out a prima facie case of age discrimination under FEHA, a plaintiff must present evidence that the plaintiff (1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination, i.e., evidence that the plaintiff was replaced by someone significantly younger than the plaintiff." (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 321.) Element (4) includes both adverse employment action and circumstances suggesting a discriminatory motive, and, as discussed above, Renswick's allegations satisfied these requirements. In addition, Renswick alleged that "upon Tapanes' arrival approximately five to six other tenured teachers over the age of forty (40) were targeted by Tapanes due to their age, and were either forced into early retirement, transferred out of [Humphreys Avenue Elementary School], or left the school

11

due to Tapanes' animosity against them due to their age." Renswick also alleged that "Tapanes terminated multiple teachers' assistants who had over 25 years of experience and were also over the age of forty." Renswick further alleged that Tapanes made derogatory remarks about her age, and spoke with her "about the differences between retirement and termination" in order to "threaten her and force her to retire."

Finally, the District argues that Renswick's "cause of action for disability and age discrimination is devoid of facts" and not pleaded with sufficient particularity. To satisfy the particularity requirement of a statutory claim against a public entity, the plaintiff must plead "'every fact material to the existence of its statutory liability . . . .'" (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795; see *Richardson-Tunnell v. School Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1061.) Renswick's second amended complaint satisfies the particularity requirement. It identifies the statutory basis for her discrimination claims, Government Code section 12940, subdivision (a), and alleges what adverse employment action she suffered and why it was the result of discriminatory actions by Tapanes. It identifies the individual who allegedly discriminated against her, describes the statements he made to and about her, and provides some (although not all) of the dates or time periods when he made the statements and took actions against her. The District does not identify any material fact that Renswick did not allege or whose absence makes her claims difficult to understand, other than to state that her discrimination claims are "devoid of facts." The allegations in Renswick's discrimination cause of action are particular enough.

D.     *The Trial Court Erred by Sustaining the Demurrer to the Fourth Cause of Action for Retaliation*

To state a claim for retaliation under FEHA, the plaintiff must allege "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1042; see *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 298.) "Under the FEHA,

12

protected activity includes opposition to 'any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part,' [citation] or 'participated in any manner in an investigation, proceeding, or hearing' in an administrative proceeding." (*Taylor v. City of Los Angeles Dept. of Water & Power*, *supra*, 144 Cal.App.4th at p. 1229.) Retaliation under Government Code section 12940, subdivision (h), "encompasses a broad range of protected activity," and the "determination as to what constitutes a protected activity is inherently fact driven." (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 652, petn. for review pending, petn. filed Nov. 22, 2013, S214798.)

Renswick alleged that the District retaliated against her for, among other things, filing complaints with the DFEH in January and November 2012, assisting others who alleged FEHA violations, and requesting the reasonable accommodation of having someone relieve her for a short period of time so that she could use the restroom. These allegations state a claim for retaliation under FEHA. (See *Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1341 [plaintiff stated retaliation claim under Government Code section 12940, subdivision (h), "which prohibits an employer from retaliating against an employee for exercising her rights under [Government Code] section 12940 . . . because she sought reasonable accommodations for her disability"]; *Taylor v. City of Los Angeles Dept. of Water & Power*, *supra*, 144 Cal.App.4th at p. 1229 [plaintiff "sufficiently pleaded that he engaged in a protected activity" by alleging that he assisted in another employee's discrimination charge and filing a complaint for retaliation].)

The District argues that Renswick "does not appear to understand that FEHA only prohibits retaliation for engaging in acts protected by FEHA," and that "[b]eing a Union Representative and being represented by a Union, even if true, are not acts protected by FEHA." The District's argument misunderstands Renswick's claim. Renswick's retaliation claim is not based only on her union activities. It is based on filing and assisting others in filing FEHA discrimination claims, acts that are protected by FEHA. Moreover, there is no reason union activities cannot form the basis of FEHA retaliation

13

claims if such activities include or are a part of opposing discrimination prohibited by FEHA or are as a result of filing, testifying, or assisting a FEHA proceeding.

E.     *The Trial Court Properly Sustained the Demurrer to the Fifth Cause of Action for Intentional Infliction of Emotional Distress Without Leave To Amend*

"To state a cause of action for intentional infliction of emotional distress, the plaintiff must allege (1) extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citation.]  Further, the conduct alleged 'must be "'so extreme and outrageous "as to go beyond all possible [bounds] of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."'"'"  (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1607-1608.)  The District argues that even if Renswick's allegations satisfy these requirements, her cause of action for intentional infliction of emotional distress is preempted by the workers' compensation law.  Renswick has not addressed this issue in her briefs.

"An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship, such as demotions and criticism of work practices, resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'  [Citation.] Workers' compensation ordinarily provides the exclusive remedy for such an injury. [Citations.]  Conduct in which an employer steps out of its "'proper role'" as an employer or conduct of "'questionable relationship to the employment,'" however, . . . is not encompassed within the compensation bargain and is not subject to the exclusivity rule. [Citation.]"  (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 367.)

Renswick argues that she "pleaded the necessary elements for a cause of action for intentional infliction of emotional distress" by alleging that "Tapanes yelled at [her]

stating comments about her teaching performance that he knew were untrue," and made the statements "specifically to make [Renswick] cry and suffer distress." Renswick contends that making such "false accusations to [Renswick] is beyond the bounds of decency and had nothing to do with his role as principal in helping [her] improve her teaching skills."

Even assuming that Tapanes' alleged conduct, including his refusal to have someone briefly supervise Renswick's class on rainy days so that she could use the restroom, was sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress, her claim still falls within the normal employment relationship, and therefore is barred by the exclusivity provision of the workers' compensation law. Because Renswick makes no effort to explain how she can amend her cause of action to avoid the exclusivity bar, we cannot say that the trial court abused its decision by denying Renswick leave to amend her cause of action for intentional infliction of emotional distress.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining the District's demurrer and to enter a new order sustaining without leave to amend the District's demurrer to the fifth cause of action for intentional infliction of emotional distress and otherwise overruling the demurrer, and ordering the District to answer the second amended complaint. Renswick is to recover her costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.